

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-17-00572-CV

**CITY OF SAN ANTONIO** by and through City Public Service Board of San Antonio d/b/a
CPS Energy,
Appellant

v.

Chris **SMITH**,
Appellee

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2015-CI-08496
The Honorable Renée Yanta, Judge Presiding

Opinion by:    Karen Angelini, Justice
Dissenting Opinion by: Irene Rios, Justice

Sitting:    Karen Angelini, Justice
            Patricia O. Alvarez, Justice
            Irene Rios, Justice

Delivered and Filed:  August 22, 2018

The City of San Antonio by and through City Public Service Board of San Antonio d/b/a

CPS Energy ("CPS Energy") appeals the trial court's denial of its plea to the jurisdiction as to

Smith's premises liability and gross negligence claims. Smith was driving his motorcycle on an

exit ramp from Interstate Highway 10 to Interstate Highway 37 near downtown San Antonio in

the afternoon when he unexpectedly encountered a fallen light pole obstructing his travel lane. The

evidence shows material fact issues exist as to whether CPS Energy waived its immunity by failing

to warn of or make safe this special defect on the roadway. Although the majority opinion decides

CPS Energy had governmental immunity, it skips over the issue of whether CPS Energy waived its immunity and instead concludes that even if it did, Smith's suit must be dismissed because the emergency exception applies to this case. Because I conclude the emergency exception does not apply, I respectfully dissent.

## WAIVER OF IMMUNITY

I agree with the majority opinion's conclusion that CPS Energy is entitled to immunity in the first instance because this lawsuit implicates CPS Energy's governmental functions. However, Smith argues that CPS Energy's immunity is waived in this case under the TTCA waiver provisions for injuries arising from conditions of real property. I conclude genuine issues of material fact exist as to whether CPS Energy's immunity is waived in this case.

## Texas Tort Claims Act

Under the Texas Tort Claims Act ("TTCA"), the legislature has waived immunity for tort claims arising from "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (West 2011). With regard to claims arising from premises defects generally, a governmental entity owes to the claimant only the duty that a private person owes to a licensee on private property, which requires the plaintiff show the governmental unit had actual knowledge of the condition. *Id.* § 101.022(a); *Texas Dep't of Transp. v. York*, 284 S.W.3d 844, 847 (Tex. 2009) (per curiam). "However, this limitation does not apply to 'special defects such as excavations or obstructions on highways, roads, or streets.'" *Texas Dep't of Transp. v. Perches*, 388 S.W.3d 652, 654 (Tex. 2012) (per curiam). (quoting § 101.022(b)). When a special defect exists, the invitee standard applies, under

which "a plaintiff need only prove that the governmental unit should have known of a condition that created an unreasonable risk of harm." *Id.* at 654–55.

### Fallen Light Pole on the Roadway was a Special Defect

"The TTCA does not define 'special defect' but likens it to 'excavations or obstructions' that exist 'on' the roadway surface." *Denton Cty. v. Beynon*, 283 S.W.3d 329, 331 (Tex. 2009) *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(b). Thus, to constitute a special defect, the condition must "be in the same class as an excavation or obstruction on a roadway." *Perches*, 388 S.W.3d at 655; *see also Beynon*, 283 S.W.3d at 331. To determine whether a condition is a special defect, the supreme court has "considered characteristics of the class of special defect, such as (1) the size of the condition, (2) whether the condition unexpectedly and physically impairs a vehicle's ability to travel on the road, (3) whether the condition presents some unusual quality apart from the ordinary course of events, and (4) whether the condition presents an unexpected and unusual danger to the ordinary users of the roadway." *Id.* "[C]onditions can be special defects like excavations or obstructions 'only if they pose a threat to the ordinary users of a particular roadway.'" *Beynon*, 283 S.W.3d at 331 (quoting *State Dep't of Highways & Public Transp. v. Payne*, 838 S.W.2d 235, 238 n.3 (Tex. 1992) (op. on reh'g)). When determining whether a condition poses a threat to ordinary users of a particular roadway, we consider "the objective expectations of an 'ordinary user' who follows the 'normal course of travel.'" *Hayes*, 327 S.W.3d at 116 (quoting *Beynon*, 283 S.W.3d at 332).

The fallen light pole in this case fits squarely within the definition of "special defect" as articulated by the supreme court. The fallen light pole, which obstructed a sizable portion of the

right travel lane,[1] presented an unexpected and unusual danger to ordinary users of the roadway in the normal course of travel. This is evidenced by the facts that between the time the light pole fell and Smith's collision, numerous drivers called 911 to report the condition and at least one other driver hit the fallen light pole. Lisa Castilleja-Rodriguez, who hit the light pole prior to Smith's collision, testified that although she tried to avoid the light pole, the light pole "knocked out" both of her right-side tires that hit it and that she then had to exit the highway and call 911. Smith testified he applied his brakes upon seeing the light pole directly ahead of him and "attempted to swerve" and "get out of the way," but the light pole was unavoidable. Thus, the evidence shows the fallen light pole was a special defect.

### Fact Issues Exist as to Duty and Breach

"[A] premises liability defendant may be subject to liability if it has a right to control the premises, which 'may be expressed by contract or implied by conduct.'" *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 473 (Tex. 2017) (quoting *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 214 (Tex. 2008)). "[A] premises-liability defendant may be held liable for a dangerous condition on the property if it 'assum[ed] control over and responsibility for the premises,' even if it did not own or physically occupy the property." *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002) (quoting *City of Denton v. Van Page*, 701 S.W.2d 831, 835 (Tex. 1986)). "Thus, the duty to make the premises safe or warn of dangerous conditions generally runs with the ownership or control of the property, and a defendant's liability under a premises liability theory rests on the defendant's assumption of control of the premises and responsibility for dangerous conditions on it." *United Scaffolding*, 537 S.W.3d at 474 (quotations omitted). "The relevant inquiry is whether

---

[1] The evidence is unclear as to precisely how much of the roadway the light pole obstructed. Smith testified the light pole "[took] up most of the road," Castilleja-Rodriguez testified it was "almost three-quarters of the way into the lane," and the SAPD crash report stated it was "about half-way" into the lane.

the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it." *Brown*, 80 S.W.3d at 556.

CPS Energy argues it did not owe a legal duty in this case because the interstate highway on which the collision occurred is owned by the State. Although it is undisputed the interchange between I-10 and I-37 is owned by TxDOT, ownership is not the only means by which a party may have a duty regarding a premises defect. *See id.* Smith alleged CPS Energy owed a duty "by contract or by undertaking" to maintain the light poles and warn of and remove the light pole that fell onto the roadway and to make such a condition safe. The jurisdictional evidence shows the City and the State entered into a contract whereby the City agreed to maintain and operate the lighting system along the interstate highways within the City, "including the furnishing of all materials, equipment, and labor which may become necessary to maintain the system." The evidence also shows, via a contract between CPS Energy and an independent contractor, that CPS Energy had a duty to maintain the lighting systems within the City, which included "state-owned expressway lighting systems." This evidence reasonably gives rise to an inference that the City delegated its duty to maintain the lighting system along the interstate highways to CPS Energy. The evidence also suggests the duty to maintain and operate the lighting system encompasses a responsibility to remove light poles when they fall onto the highway. Joel Nelson, an SAPD senior management analyst, testified when asked who is responsible to get fallen light poles off the highway and out of traffic, "TxDOT . . . has the responsibility for all things on the highway with the exception of the light poles. I think that belongs to CPS." Jose Trevino, an employee at CPS Energy, testified when asked who is responsible for removing a fallen light pole on the roadway, "It could be either SAPD, or they could ask for assistance from CPS."

Smith produced evidence showing the following: At 3:00 p.m., a driver lost control and hit a light pole while driving on the ramp from eastbound I-10 to northbound I-37; SAPD received a call at 3:31 p.m. reporting a light pole was laying in the lane on the ramp from I-10 to I-37; SAPD received a phone call at 3:49 p.m. reporting that "a large pipe is in [the] lane of traffic causing a hazard" on the ramp from eastbound I-10 to northbound I-37; SAPD received a phone call at 3:50 p.m. reporting that a "big light pole [was] in [the] lane" on the ramp from eastbound I-10 to northbound I-37; SAPD received Castilleja-Rodriguez's call at 4:26 p.m. reporting her collision with the light pole; SAPD received a call at 4:37 p.m. reporting a pole was laying on the highway on eastbound I-10 causing a traffic hazard; and SAPD received a call at 4:46 p.m. reporting Smith's collision. Castilleja-Rodriguez testified that upon being notified of a fallen pole on the roadway, she would expect SAPD to "take it as an immediate hazard . . . and put flares to let people know ahead of time that there's a major obstacle in the road," and CPS Energy to "go and take care of it, get it out of the roadway." Castilleja-Rodriguez testified that after she called SAPD via 911, and within five to ten minutes after hitting the pole, she called CPS Energy to report the fallen light pole. Castilleja-Rodriguez related she told CPS Energy personnel the exact location of the fallen light pole, and that she was told CPS Energy "already [had] a call on that." When asked whether an hour and forty-six minutes is too long for a pole to be down and blocking a lane of traffic on an interchange like the one between I-37 and I-10, the City's corporate representative replied, "I mean, if it's blocking a lane, absolutely . . . that would be too long."

Viewing the evidence in the light most favorable to Smith and indulging in every reasonable inference and resolving any doubts in Smith's favor, I conclude genuine issues of material fact exist as to whether CPS Energy had control over the highway with regard to the lighting system and thus had a duty to warn of or remove the light pole when it fell onto the

roadway and created a dangerous condition, whether CPS Energy knew or should have known about the fallen light pole, and whether CPS Energy breached its duty by failing to remove or warn of the fallen light pole. *See Suarez v. City of Texas City*, 465 S.W.3d 623, 633 (Tex. 2015) (where plea to the jurisdiction challenges existence of jurisdictional facts, we take as true all evidence favorable to the nonmovant, indulge every reasonable inference, and resolve any doubts in the nonmovant's favor); *see also Brown*, 80 S.W.3d at 556; *Strunk v. Belt Line Rd. Realty Co.*, 225 S.W.3d 91, 100 (Tex. App.—El Paso 2005, no pet.). "If the evidence raises a fact question on jurisdiction, the trial court cannot grant the plea, and the issue must be resolved by the trier of fact." *Hayes*, 327 S.W.3d at 116.

### DISCRETIONARY AND EMERGENCY EXCEPTIONS DO NOT APPLY

CPS Energy contends that even if its immunity is waived in this case, it retains its immunity under the discretionary and emergency exceptions to the TTCA.

Although the TTCA waives governmental immunity in certain circumstances, it also provides that exceptions may apply that render the TTCA inapplicable to a claim, meaning, as relevant here, the governmental entity could retain its immunity despite a plaintiff's ability to show a fact issue exists as to waiver. *See generally* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.051-101.067.

### Discretionary Exception

The TTCA provides its waiver provisions do not apply "to a claim based on: (1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or (2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit." *Id.* § 101.056. CPS Energy argues it retains its

immunity because it had no legal obligation to remove the fallen light pole from the roadway. As explained above, the evidence shows a question of fact exists on whether CPS Energy had a legal duty to maintain the light poles along the highway, which included removing them from the roadway when they fall.

Thus, the discretionary exception does not afford CPS Energy any retainer of immunity in this case. This leaves the emergency exception, which the majority finds persuasive and determinative of this case. For the following reasons, I disagree.

**Emergency Exception**

The TTCA provides it "does not apply to a claim arising . . . from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others." *Id.* § 101.055(2). The majority concludes that "because Smith's claims arose from CPS Energy's actions in responding to an emergency call or reacting to an emergency situation, they are barred by section 101.055(2) of the TTCA." For the following reasons, I disagree with the majority's analysis and conclusion.

A. **Pleas to the Jurisdiction Invoking the Emergency Exception Should be Analyzed under the Traditional Summary Judgment Framework Because the Application of the Emergency Exception Implicates the Merits**

The supreme court has instructed that our review of a plea to the jurisdiction that challenges the existence of jurisdictional facts and that implicates the merits of the case should "mirror[] that of a traditional summary judgment motion." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). The supreme court articulated the standard as follows:

> Initially, the ***defendant carries the burden*** to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction. If it does, the plaintiff

is then required to show that a disputed material fact exists regarding the jurisdictional issue. If a fact issue exists, the trial court should deny the plea. But if the relevant evidence is undisputed or the plaintiff fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law.

*Id.* (emphasis added).[2] Where a plaintiff presents evidence raising a genuine issue of material fact in response to a defendant's plea to the jurisdiction challenging the existence of jurisdictional facts and the jurisdictional issue implicates the merits of the case, the resolution of the disputed facts is reserved for the factfinder. *Univ. of Texas v. Poindexter*, 306 S.W.3d 798, 807 (Tex. App.—Austin 2009, no pet.). In such a case, the trial court's determination on appeal is "reviewed de novo, with the appellate court indulging every reasonable inference and resolving any doubts in the nonmovant's favor." *Id.* On the other hand, where the defendant presents evidence showing a lack of jurisdiction and the jurisdictional issue does *not* implicate the merits of the case, the trial court— not the jury—must act as the factfinder and resolve disputed and conflicting evidence, and the trial court's resolution thereof may be challenged on appeal for legal and factual sufficiency. *Id.* at 806.

The majority concludes that determining whether the emergency exception applies to this case "[does] not implicate the merits of Smith's claims." I respectfully disagree. The majority's conclusion that the application of the emergency exception does not implicate the merits of the case conflicts with a holding by this court just last year. In *City of San Antonio v. Torres*, a negligence suit against the City arising from an automobile collision with a City employee, this court held the application of the emergency exception "is inextricably bound to the merits of appellees' claim." *See City of San Antonio v. Torres*, No. 04-17-00309-CV, 2017 WL 5472537, *3 (Tex. App.—San Antonio Nov. 15, 2017, no pet.) (mem. op.) This court thus concluded that "the burdens and our review [of whether the emergency exception applied] mirror summary

---

[2] This standard has since been reaffirmed by the supreme court in *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018).

judgment practice." *Id.* Applying the summary judgment burden shifting framework and review, this court stated: "To meet its initial burden, the City was required to present evidence establishing [the City employee] was responding to an emergency call, complied with the laws applicable to an emergency, and did not [act] recklessly or with conscious indifference to the safety of others." *Id.* This court went on to hold the "City's evidence [was] insufficient to meet its burden to negate that [government employee acted] recklessly or with conscious disregard for the safety of others," and that "[plaintiffs] were required to submit evidence only if the City presented evidence establishing immunity." *Id.* at *5.

The application of the emergency exception implicates the merits of a case because the emergency exception under § 101.055(2) practically operates as a defense to claims asserted under the immunity-waiver provisions of the TTCA by requiring, where a claim arises from the action of a public employee while reacting to an emergency situation, the defendant to show either that the employee's action complied with applicable laws or was not taken with conscious indifference or reckless disregard for the safety of others. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2); *Torres*, 2017 WL 5472537, at *3; *see also Durham v. Bowie Cty.*, 135 S.W.3d 294, 298 (Tex. App.—Texarkana 2004, pet. denied) (noting emergency exception operates as an affirmative defense). Thus, when a defendant meets its burden by presenting evidence the emergency exception applies, the plaintiff, in order to succeed on the merits of his claim, must convince the finder of fact via controverting evidence that some element of the emergency exception was not met. *See, e.g., Lucker v. Tex. Dep't of Transp.*, No. 13-16-00380-CV, 2017 WL 3304178, at *2 (Tex. App.—Corpus Christi-Edinburg Aug. 3, 2017, pet. denied) (mem. op.) (noting in a suit in which TxDOT asserted the application of the emergency exception, the jury charge asked whether the TxDOT employee who had taken action at the scene of a flooded

roadway was reacting to an emergency situation and whether the accident was proximately caused by the employee's conscious indifference or reckless disregard of the safety of others). The application of the emergency exception is not like those jurisdictional issues that do not implicate the merits of a case, such as whether the plaintiff satisfied a statutory prerequisite to filing suit; rather, the application of the emergency exception implicates the merits of the plaintiff's case because it affects what the plaintiff must show in order to recover. *See Torres*, 2017 WL 5472537, *3; *cf. Poindexter*, 306 S.W.3d at 807-08 (holding jurisdictional issue of plaintiff's compliance with statutory prerequisite to filing suit did not implicate the merits of the case).

Because the issue of whether the emergency exception applies necessarily implicates the merits of the case, I believe this court's analysis in *Torres* was correct and followed the supreme court's standard of review set forth in *Garcia*. Accordingly, I would analyze this issue under the traditional summary judgment framework.[3] *See Garcia*, 372 S.W.3d at 635.

The difference in the standards of review employed is not determinative of the outcome in this case because the relevant jurisdictional evidence is undisputed, and thus whether the emergency exception applies should be decided as a matter of law. *See Garcia*, 372 S.W.3d at 635; *City of San Antonio v. Mendoza*, No. 04-17-00168-CV, 2017 WL 4014617, at *2 (Tex. App.—San Antonio Sept. 13, 2017, no pet.) (mem. op.). However, in other cases where the relevant jurisdictional evidence *is* disputed—such as regarding whether a governmental employee was reacting to an emergency, whether that employee complied with applicable law, or whether the employee acted with conscious indifference or reckless disregard for the safety of others—the

---

[3] *Torres* is not the only case from this court applying the traditional summary judgment analysis where the governmental entity claimed it retained immunity under the emergency exception. *See City of San Antonio v. Reyes*, No. 04-16-00748-CV, 2017 WL 3701772, at *3 (Tex. App.—San Antonio Aug. 23, 2017, no pet.) (mem. op.); *City of Laredo v. Varela*, No. 04-10-00619-CV, 2011 WL 1852439, at *3 (Tex. App.—San Antonio May 11, 2011, pet denied) (mem. op.). Other courts have employed this analysis as well. *See, e.g.*, *Texas Dep't of Pub. Safety v. Sparks*, 347 S.W.3d 834, 842 (Tex. App.—Corpus Christi 2011, no pet.).

issue of whether the application of the emergency exception implicates the merits of a claim will affect who resolves the disputed facts and the deference this court gives to the trial court when reviewing a trial court's ruling on a plea to the jurisdiction. *See Poindexter*, 306 S.W.3d at 806-07.

## B. CPS Energy Failed to Show Smith's Claims Arise from the Action of an Employee Reacting to An Emergency

Applying the standard of review used by this court in *Torres*, I look first to whether CPS Energy met its initial burden to present evidence showing that Smith's claims arise from the action of an employee while responding to an emergency call or reacting to an emergency situation and that the action was in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, that the action was not taken with conscious indifference or reckless disregard for the safety of others. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2).

Viewing the evidence in the light most favorable to Smith and indulging in every reasonable inference and resolving any doubts in Smith's favor, I conclude CPS Energy failed to show Smith's premises liability claim arises from the action of an employee while responding to an emergency call or reacting to an emergency situation. The origination of Smith's injuries was the condition of the highway—not an action taken by an employee while responding or reacting to an emergency. *See Lancer Ins. Co. v. Garcia Holiday Tours*, 345 S.W.3d 50, 54 (Tex. 2011) (noting "arise" means to originate in, have its origin in, grow out of, or flow from).

The most recent supreme court case to address the emergency exception is *City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006) (Hartman II).[4] There, the City was hit by a "rainstorm of historic proportions," causing the City to be "declared a disaster area." *Id.* at 669. City officials responded to the widespread flooding by placing barricades and flares on roads and

---

[4] I refer to the supreme court opinion as Hartman II and the court of appeals opinion as Hartman I.

highways throughout the city, including at least one barricade on the east side of a flooded portion of Rigsby Avenue.[5] *Id.* The Hartmans sued the City for premises liability after their relatives drove through the flooded portion of the street and drowned. *Hartman I*, 155 S.W.3d at 464-65. The supreme court held the emergency exception applied to more than traffic accidents involving government employees, and that the widespread flooding throughout the City, caused by "rainfall totals [that] exceeded those expected in a 100-year flood," constituted an emergency situation. *Hartman II*, 201 S.W.3d at 672-73. Thus, the supreme court concluded the Hartmans' premises liability suit arose out of City employees' actions while responding to an emergency situation. *Id.* at 673.

Noting the supreme court in *Hartman II* "interpreted the term 'emergency' broadly," the majority proceeds to apply the emergency exception to the facts of this case, concluding Smith's claims arose from CPS Energy's response to an emergency call or in reaction to an emergency situation. However, the majority's expansive application of the emergency exception to the facts of this case is not warranted by either § 101.055's language or the supreme court's interpretation thereof. The emergency exception applies to claims ***arising from*** the action of a government employee while responding to an emergency call or reacting to an emergency situation. TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.055(2).  In *Hartman II*, the suit arose from the actions of City employees because City employees had placed barricades throughout the City, including the roadway in question. *See Hartman II*, 201 S.W.3d at 669; *Hartman I*, 155 S.W.3d at 463. Thus, the Hartmans' suit did not merely implicate the City's failure to warn of or make safe the premises defect of the flooded roadway; rather, the suit also implicated the City employees' actions in

---

[5] Part of the City's argument was that the barricades present on the roadway at the time of the accident were adequate to warn the decedents. *See City of San Antonio v. Hartman*, 155 S.W.3d 460, 469 (Tex. App.—San Antonio 2004), *rev'd*, 201 S.W.3d 667 (Tex. 2006) (Hartman I).

placing barricades on some parts of the roadway and not others. In this case, however, no government employee had taken any action at the scene with respect to the fallen light pole on the highway.

The other cases cited by the majority to support its conclusion that the emergency exception applies to this case involve actions taken by government employees at the scene of a roadway condition. *See City of Coll. Station v. Kahlden*, No. 10-12-00262-CV, 2014 WL 1269026, at *5 (Tex. App.—Waco Mar. 27, 2014, pet. denied) (mem. op.); *City of El Paso v. Segura*, No. 08-02-00240-CV, 2003 WL 1090661, at *3 (Tex. App.—El Paso Mar. 13, 2003, pet. denied) (mem. op.). In *Kahlden*, the plaintiff brought suit against the city after her mother was hit from behind after stopping behind a police car that had stopped on the roadway to remove debris. *Kahlden*, 2014 WL 1269026, at *1. The court noted the patrol officer stopped on the highway with his emergency lights activated to remove the debris, and thus "took action" in response to a situation he considered an emergency. *Id.* at *5. In *Segura*, a motorist crashed into a construction barricade, knocking a directional light generator onto the roadway. *Segura*, 2003 WL 1090661, at *1. Police officers responding to the scene positioned their police vehicle near the wrecked vehicle and activated its flashing emergency lights; nonetheless, the plaintiff drove past the positioned police vehicle and crashed into the generator. *Id.* at *1-*2, *4. Thus, Segura's suit implicated an action taken by government employees upon arrival at the scene. *See id.*

In this case, however, at the time Smith collided with the light pole on the highway, no government employee had taken any action at the scene, or even arrived at the scene for that matter. At most, the evidence shows CPS Energy had actual knowledge of the fallen light pole and were in the process of responding to the dangerous condition on the roadway. The majority focuses on the fact that CPS Energy, after receiving a call from SAPD, dispatched a troubleman to locate the

fallen light pole. But this lawsuit does not arise from any action taken by the CPS Energy troubleman that was driving around looking for the pole. Rather, this suit arises from the existence of a light pole in the roadway to which no government employee had responded at the time the incident occurred.

In the TTCA context, the supreme court has interpreted the term "arises from" as requiring a nexus. *See LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992). Accordingly, in the context of the application of the TTCA's emergency exception the term "arises from" requires "a nexus" between the injury and the action of a government employee. *See LeLeaux*, 835 S.W.2d at 51. This nexus requires more than mere involvement of governmental employees in the events leading up to the injury; rather, "the [employee's action] must have actually caused the injury." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003) (internal quotations omitted). Although this principle has been applied primarily to the issue of whether a plaintiff's claim arises from the use of a vehicle or a condition or use of property, the same logic applies to the issue of whether a plaintiff's claim arises from an action of an employee while responding to an emergency call or reacting to an emergency situation. Because Smith's claims were not actually caused by any action of a government employee, the emergency exception does not apply.

In *Dominguez v. City of Fort Worth*, the Fort Worth Court of Appeals considered a premises liability suit against a city with similar facts as *Hartman* but with a crucial distinction that is instructive in this case. No. 2-06-196-CV, 2008 WL 623583, at *3 (Tex. App.—Fort Worth Mar. 6, 2008, pet. denied) (mem. op.). *Dominguez* involved a premises liability suit where the police redirected traffic because a street was beginning to flood due to heavy rains. *Id.* at *1. The driver turned the vehicle around and, without any further redirecting, made several turns onto

different streets and successfully traversed two low water crossings. *Id.* However, in his third attempt at crossing a low water crossing, the vehicle was swept away and both occupants drowned. *Id.* Unlike in *Hartman* however, no city employee had arrived at or taken any action with regard to the particular flooded roadway crossing at which decedents drowned. *Id.* The court held the emergency exception was inapplicable because the officers' actions did not cause the decedents' deaths, i.e., the suit did not arise from an action taken by a government employee. *Id.* at *3. This distinction is also applicable in this case, where Smith's actions were not caused by any action taken by a government employee, but by a fallen light pole on the roadway. I am not aware of ***any*** case where a court has applied the emergency exception to a premises liability suit where no government employee had arrived and taken any action on the scene, and I would not do so here.[6]

Moreover, the fact that government employees merely have actual knowledge of a dangerous condition on the roadway and are in the process of reacting or responding to it cannot and does not mean the claim "aris[es] . . . from the ***action*** of an employee while responding to an emergency call or reacting to an emergency situation." TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.055(2) (emphasis added). If this were so, all special defect claims would trigger the emergency exception where the governmental defendant had actual knowledge of the condition, thus allowing it to claim it was in the process of reacting to it. Such an extension of the emergency exception would effectively rewrite the TTCA to alter what a plaintiff must show to succeed on a special defect claim where it is undisputed the governmental unit had actual knowledge of the condition.

---

[6] In every other case where a court of appeals applied the emergency exception to a premises liability suit, the suit implicated an action taken by a government employee at the scene. *See Durham*, 135 S.W.3d at 299; *City of Arlington v. Whitaker*, 977 S.W.2d 742, 744 (Tex. App.—Fort Worth 1998, pet. denied).

When interpreting and applying a statutory provision, we "must consider the statutory scheme as a whole" and "strive to give the provision a meaning that is in harmony with other related [provisions]." *Fort Worth Transportation Auth. v. Rodriguez*, No. 16-0542, 2018 WL 1976712, at *5 (Tex. Apr. 27, 2018). "[W]hen the Legislature has enacted a comprehensive statutory scheme," we should avoid interpreting provisions in ways that "may upset the Legislature's careful balance of policies and interests." *Ritchie v. Rupe*, 443 S.W.3d 856, 880 (Tex. 2014). Rather, we should "consider the context and framework of the entire statute and meld its words into a cohesive reflection of legislative intent." *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 326 (Tex. 2017).

An excavation or obstruction-like condition on a well-trafficked highway that presents an unusual and unexpected danger to ordinary drivers is, by nature, an emergency. *See City of Denton v. Paper*, 376 S.W.3d 762, 765-66 (Tex. 2012) (per curiam); *Beynon*, 283 S.W.3d at 331 (explaining special defects); *see also* BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "emergency" as "[a] sudden and serious event or an unforeseen change in circumstances that calls for immediate action to avert, control, or remedy harm."). The legislature decided as a matter of policy that it was important that the state's governmental units have an incentive to cure dangerous premises conditions, and that governmental units, to an extent,[7] should be held legally responsible for injuries arising out of such conditions where the governmental unit with control over the premises has actual knowledge of the condition. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021(2), 101.022(a). Recognizing the heightened danger to the travelling public presented by the existence of dangerous conditions on the roadway, the legislature chose as a matter of policy to place a heightened duty on governmental units with respect to special defects, providing that a

---

[7] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.023, 101.024 (limiting the amount of liability of governmental units).

governmental unit should be held legally responsible for such roadway conditions merely when it should have known of the condition. *See id.* § 101.022(b).

The effect of the majority's conclusion that the emergency exception applies in this case is to open the door to allow governmental units to seek refuge under the emergency exception whenever, as here, it is undisputed the unit had actual knowledge of the dangerous condition, thus allowing it to claim it was in the process of responding or reacting to an emergency. This would mean that whenever a governmental unit in a special defect case[8] had actual knowledge of the condition, the plaintiff must not merely show that the governmental unit knew or should have known of the condition and breached its duty of care, as § 101.022(b) provides, but that, in the absence of laws or ordinances applicable to the governmental unit's response to the condition, the plaintiff would also have to show the governmental unit reacted with "conscious indifference or reckless disregard for the safety of others," i.e., gross negligence.[9] *Id.* § 101.055(2). Such a sweeping application of the emergency exception that changes the burden placed on plaintiffs where a governmental unit has actual knowledge of the roadway condition does not square with the legislature's intent that governmental units should be liable for dangerous premises conditions generally and have a heightened duty regarding special defects.

Commenting on the purpose of the emergency exception, the supreme court in *Hartman II* stated, "The Legislature has determined that the public good will be better served by encouraging public employees to take immediate action in emergency situations, rather than by suing them later

---

[8] This problem would also apply to ordinary premises defect claims under § 101.022(a).

[9] *See City of N. Richland Hills v. Friend*, 337 S.W.3d 387, 396 (Tex. App.—Fort Worth 2011), *rev'd on other grounds*, 370 S.W.3d 369 (Tex. 2012) (noting the "conscious indifference" or "reckless disregard for the safety of others" language in § 101.055(2) equates to the state of mind required for gross negligence); s*ee also* TEX. CIV. PRAC. & REM. CODE ANN. § 41.001 (defining gross negligence as an act that "involves an extreme degree of risk" and "of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others").

if their actions were imprudent." *Hartman II*, 201 S.W.3d at 673. This purpose is furthered when the emergency exception is applied only to claims arising from actions taken by public employees, such as in premises liability suits where government employees have responded to and taken action at the scene. *See id.* at 672; *Durham*, 135 S.W.3d at 299; *Segura*, 2003 WL 1090661, at \*3; *Whitaker*, 977 S.W.2d at 744. It is not furthered however, where, as here, an ordinary user of the roadway comes upon a dangerous obstruction and no government employee was at the scene or had taken any prior action at the scene regarding the condition. *See Dominguez*, 2008 WL 623583, at \*3. Extending the emergency exception to cases where the governmental unit's employees know about the condition and are merely in the process of responding to it does nothing to further this purpose.

The issue in this case is not whether a special defect in the form of a fallen light pole on the roadway is an emergency. The issue is whether CPS Energy met its burden to show Smith's claims arise from the action of an employee while responding or reacting to an emergency. The plain language of the statute and case law indicate that CPS Energy failed to meet its burden. The majority repeatedly states Smith did not plead or prove that the emergency exception did not apply; however, Smith was only required to plead and prove the emergency exception did not apply once CPS Energy met its initial burden to present evidence showing the emergency exception applied to the facts of the case, which it failed to do. *See Garcia*, 372 S.W.3d at 635; *Torres*, 2017 WL 5472537, at \*3, \*5.

Accordingly, I conclude the emergency exception does not apply to this case and therefore does not provide a basis for reversing the trial court's order.

## CONCLUSION

For the foregoing reasons, I do not believe the emergency exception provides a basis for reversing the trial court's order and dismissing Smith's claims, and because the evidence raises fact issues as to CPS Energy's liability, I would affirm the trial court's order. Because the majority concludes otherwise, I respectfully dissent.

Irene Rios, Justice