

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00203-CV

Michael S. **GOODLETT,** Jr. through his Legal Guardian, Michael S. Goodlett, Sr.,
Appellant

v.

**NORTHEAST INDEPENDENT SCHOOL DISTRICT**,
Appellee

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-CI-03596
Honorable Cathleen M. Stryker, Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:       Rebeca C. Martinez, Chief Justice
               Beth Watkins, Justice
               Liza A. Rodriguez, Justice

Delivered and Filed: May 26, 2021

AFFIRMED

Michael Scott Goodlett, Jr., through his father as his legal guardian, appeals the trial court's

order granting the plea to the jurisdiction filed by Northeast Independent School District (NEISD)

and dismissing his claims for disability discrimination. We affirm the trial court's order.

## BACKGROUND

The basic facts are undisputed. Goodlett began working for NEISD as a custodian at the

Blossom Athletic Center (BAC) in August 2014. Goodlett, a former NEISD student, was hired

through a program utilized by the district to provide employment for former special needs students.

At the time he was hired, NEISD was aware of Goodlett's diagnosis of autism. Goodlett proved to be fully capable of meeting the expectations and performing the tasks assigned to him as a custodian. Goodlett had two immediate supervisors, Carlos de la Garza, the area foreman in charge of custodians, and Tim Woods, the Director of Athletics in charge of facilities. De la Garza and Woods characterized Goodlett as a hardworking and friendly member of the custodial team, which often worked in pairs or groups to clean and maintain the athletic facilities at BAC and Heroes Stadium, another NEISD athletic facility.

On January 22, 2018, an incident occurred which led to Goodlett's termination. Goodlett was working with three other custodians at Heroes Stadium that morning: George Rodriguez, Eddie Romero, and Maria Castillo. As the four co-workers left together for lunch, Rodriguez challenged them to race to the car and they all began to run. Goodlett pushed Castillo from behind and she fell to the ground, injuring her left hand and ripping her pants. NEISD surveillance cameras recorded video of the incident. The group of co-workers continued on to lunch, but when they returned to campus Castillo filed a report with the NEISD Police Department and initiated a workers' compensation claim. Another one of the co-workers, Romero, called the supervisor de la Garza and reported that Goodlett pushed Castillo. De la Garza went to Heroes Stadium to investigate the incident, along with Tim Woods. Goodlett told both de la Garza and Woods that he pushed Castillo. De la Garza and Woods also interviewed and obtained written statements from the other three co-workers. All four of the custodians told essentially the same version of events: Goodlett pushed Castillo to the ground while they were racing to the car. Goodlett signed a handwritten statement admitting that, "I Scottie pushed Maria she fell down and hurt her. I didn't mean to her [sic]." In her written statement, Castillo stated that Goodlett pushed her that day, but also stated that Goodlett had previously threatened to hit her on two occasions. De la Garza called the NEISD police. Both de la Garza and Woods called Goodlett's father so he could "be there for

Scott." Goodlett's father arrived at the stadium to find Goodlett with his three coworkers, a NEISD police officer, de la Garza, and Ward. Goodlett, Sr. later testified that his son told him, "I pushed her. By [sic] bad. I shouldn't have done it."

Goodlett, Sr. was instructed to take Scott to the NEISD Human Resources office where they met with Michael Wiley, the Employee Relations Officer. At the conclusion of the meeting, Scott Goodlett was placed on administrative leave with pay. Wiley continued investigating the incident and Castillo's new allegation of prior threats by Goodlett. When Wiley interviewed Castillo, she stated that, three to four months prior to the January 22 incident, Goodlett told her "to put a chemical away or he was going to punch her." Castillo further stated her co-worker Rodriguez witnessed the threat and she contemporaneously told her other co-worker, Romero, about Goodlett's threat. Rodriguez and Romero provided additional written statements corroborating Castillo's description of Goodlett's prior threat to her. Rodriguez additionally reported to Wiley that Goodlett previously threatened to hit him when Goodlett became upset after being told to stop riding a tractor. Wiley also reviewed the police incident report and the surveillance video of the January 22 incident. Wiley then forwarded all of the investigatory materials to Karen Funk, the NEISD Executive Director of Athletics.

On the morning of February 2, 2018, Funk met with Wiley and the NEISD Director and Executive Director of Human Resources to review the evidence collected during the investigation. Funk recommended termination of Goodlett's employment and prepared a memorandum setting forth the reasons for her decision — that Goodlett "had pushed another coworker to the ground, causing her to be injured, and on prior occasions [Goodlett] had threatened violence against other employees." Funk also documented that Goodlett's behavior had violated multiple NEISD expectations and prohibited behaviors applicable to all employees. Later that day, Funk and Wiley met with Goodlett and his parents to inform him that NEISD was terminating his employment. A

formal termination letter followed. Two weeks later, Goodlett's mother wrote a letter to Funk requesting she re-evaluate her son's "situation as a person with special needs" and give him a second chance.

On May 31, 2018, Goodlett filed a charge with the EEOC and the Texas Workforce Commission's Civil Rights Division ("TWC") alleging disability discrimination involving "issues of Discharge that . . . occurred on or about Jan 22, 2018 through Feb 02, 2018." In the charge, Goodlett alleged that he "accidentally pushed Maria on her back which caused her to fall" and "this is an isolated incident that occurred while we were all playing and with no intent to hurt anybody." On June 5, 2018, the EEOC sent NEISD notice of the charge of discrimination, along with a copy of Goodlett's charge.

On February 22, 2019, Goodlett filed suit against NEISD under the Texas Commission on Human Rights Act ("TCHRA")[1] alleging claims for disability discrimination based on his termination and on a failure to accommodate his disability. With respect to his disability, Goodlett alleged that he is a person with an intellectual disability because he has autism which impairs his ability to navigate social situations; he has the mental age of a 10-12 year old and reads at the fifth to sixth grade level; and he relies on his parents to deal with social situations. As to the January 22, 2018 incident, Goodlett alleged Rodriguez suggested the coworkers race to his car when they were going to lunch; while they were running, Goodlett "accidentally touched Maria and she fell;" when they returned to campus after lunch, Romero reported the incident to the foreman de la Garza

---

[1] In his brief, Goodlett makes a statement that his claims are brought under the federal Americans with Disabilities Act, not the Texas TCHRA. However, Goodlett's third amended petition, his live pleading at the time of the hearing on NEISD's plea to the jurisdiction, alleged he was an employee as defined in the TCHRA; he filed a discrimination charge with the TWC as well as the EEOC; he was discriminated against because of his disability "in violation of section 21.001, et seq., of the Texas Labor Code;" and he was denied "accommodations which would have allowed him to communicate regarding what actually happened" on January 22, 2018, "in violation of section 21.051(2) of the Texas Labor Code." Further, Goodlett's petition explicitly states in Paragraph 27, "Plaintiff has alleged no claim based on federal law or statute."

who reported it to the campus police; when Goodlett's father arrived, "he found Scott in a meeting . . . with one campus police officer, [his three coworkers], Carlos de la Garza, and Tim Woods" and "[t]here was no one present to help Scott answer questions." During the drive to the NEISD Human Resources office, "Scott indicated to his father that he had pushed Maria [b]ut he could not explain how that 'push' had happened." When Wiley asked what happened, "[a]gain, Scott said he had pushed Maria [b]ut Scott did not explain how or in what way he had 'pushed' Maria." The petition acknowledges that Goodlett's father was present for the questioning by Mr. Wiley. The petition also acknowledges that Funk told Goodlett "he was fired because he violated NEISD rules and had threatened or attempted to injure another person," but Goodlett alleges that he "had *no intent* to hurt anyone." Goodlett also alleges that "[n]o other employee involved in the horseplay was disciplined." The petition further alleges that Funk "was aware of Scott's complete inability to navigate social situations" yet "[t]here was no attempt at this meeting to accommodate Scott's very limited functioning in complicated social interactions." Under "Causes of Action," Goodlett's petition alleges he was "subjected to discrimination based on his disability in his employment" in violation of the TCHRA in that "NEISD knew Plaintiff suffered from limited understanding and limited ability to navigate social situations" and "terminated Plaintiff because he could not explain accurately what happened." Goodlett also alleges that NEISD terminated him "while the employees who encouraged and participated in the horseplay received no discipline." Finally, Goodlett alleges that NEISD "denied him accommodations which would have allowed him to communicate regarding what actually happened."

NEISD filed a "Plea to the Jurisdiction and, Alternatively, Traditional Motion for Summary Judgment," alleging the trial court lacked jurisdiction because the facts pled in Goodlett's petition failed to establish a prima facie case on his discrimination claims. NEISD also alleged that Goodlett had failed to exhaust his administrative remedies on his failure-to-accommodate claim.

NEISD attached the following evidence: (1) deposition of Scott Goodlett, with attached exhibits (Exhibit A); (2) deposition of Michael Goodlett, Sr., with attached exhibits (Exhibit B); (3) affidavit of Karen Funk, with attached exhibits (Exhibit C); (4) deposition of Karen Funk (Exhibit D); (5) deposition of Tim Woods (Exhibit E); (6) deposition of Carlos de la Garza (Exhibit F); and (7) affidavit of Joel Trevino (NEISD custodian of records), with attached exhibits (Exhibit G). Goodlett filed a response attaching evidence consisting of: (1) excerpts from the depositions of Scott Goodlett, Michael Goodlett, Sr., de la Garza, Funk, and Woods (Exhibits A-C, E-F); (2) the EEOC file (Exhibit D); (3) EEOC Draft Strategic Plan (Exhibit G); and (4) a declaration by Brent Evans, LCSW, Scott Goodlett's counselor stating he is not a risk in the workplace (Exhibit H). After a hearing, the trial court signed a general order granting NEISD's plea to the jurisdiction and dismissing all of Goodlett's claims for unlawful discrimination under Chapter 21 of the Texas Labor Code. The trial court's order also (i) sustained Goodlett's objection to the EEOC's investigatory conclusions and disregarded Exhibits G-3, G-5, and G-8 attached to NEISD's plea to the jurisdiction, and (ii) overruled Goodlett's objection to his deposition testimony due to his incompetency. Goodlett appeals.

### DISCUSSION

On appeal, Goodlett argues the trial court erred in granting NEISD's plea to the jurisdiction because he exhausted his administrative remedies on all his claims, and he established a prima facie case of discriminatory discharge/disparate treatment and failure to accommodate. NEISD disagrees, arguing that Goodlett failed to properly amend his initial EEOC/TWC complaint to include a failure-to-accommodate claim and thus failed to exhaust his administrative remedies on that claim. NEISD also asserts that Goodlett failed to establish sufficient jurisdictional facts to present a prima facie case on his claims as required to defeat its plea to the jurisdiction. Specifically, NEISD points to the absence of any allegation or evidence that Goodlett's disability

was a motivating factor in the decision to terminate his employment or that he ever requested the accommodation he contends was denied. NEISD also asserts that Goodlett was, in fact, provided the accommodation of having one of his parents present with him during the meetings concerning his misconduct. Finally, Goodlett argues the trial court abused its discretion in overruling his objection that he was not competent to testify in a deposition because he is the subject of a guardianship.

### *Plea to the Jurisdiction*

Whether the trial court has subject matter jurisdiction over Goodlett's claims is a question of law that we review de novo. *City of San Antonio, ex rel. City Public Service Bd. v. Smith*, 562 S.W.3d 75, 79 (Tex. App.—San Antonio 2018, pet. denied) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). "Our ultimate inquiry is whether the particular facts presented affirmatively demonstrate a claim within the trial court's subject-matter jurisdiction." *Id.*

A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Immunity from suit is properly asserted in a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225-26. If a plea to the jurisdiction challenges the pleadings, the court liberally construes the pleadings to determine whether the plaintiff has alleged facts that "affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* at 226. If, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts which also implicate the merits of the case, the court considers any relevant evidence submitted by the parties to determine whether a fact issue exists. *Id.* at 227. In doing so, the court applies a summary-judgment-like standard and takes as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor. *Id.* at 228. "[I]f the relevant evidence is undisputed

or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228. However, if the evidence creates a fact question regarding jurisdiction, the plea must be denied pending resolution of the fact question by the trier of fact. *Id.* at 227-28.

### Governmental Immunity

"Under the common-law doctrine of sovereign immunity, the sovereign cannot be sued without its consent." *Smith*, 562 S.W.3d at 80 (citing *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011)). "Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State, including counties, cities, and school districts." *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). "A party suing a governmental entity must establish the state's consent, which may be alleged either by reference to a statute or to express legislative permission." *Smith*, 562 S.W.3d at 80 (citing *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999)). "Absent the State's consent to suit, a trial court lacks subject-matter jurisdiction." *Id.*

### Waiver of Governmental Immunity

The legislature has waived governmental immunity for suits brought against governmental entities, including school districts, under the TCHRA. TEX. LAB. CODE ANN. § 21.254 (providing that after satisfying the administrative requirements, "the complainant may bring a civil action"); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636-37 (Tex. 2012). The Texas Supreme Court has construed the legislative waiver in the TCHRA as limited, stating that it applies only if the plaintiff alleges facts that would state a claim for conduct that violates the TCHRA. *Garcia*, 372 S.W.3d at 636-37. "In a suit against a governmental employer, the prima facie case implicates both the merits of the claim and the court's jurisdiction because of the doctrine of sovereign immunity." *Id.* at 635-36 (elements of the claim are jurisdictional); *Alamo Heights*

*Indep. Sch. Dist. v.Clark*, 544 S.W.3d 755, 784 (Tex. 2018) (the elements of the TCHRA violation are jurisdictional facts).

The TCHRA provides in relevant part that an employer commits an "unlawful employment practice" if, "because of" the employee's disability, the employer discharges the individual or discriminates in any other manner in connection with compensation or the terms, conditions, or privileges of employment. TEX. LAB. CODE ANN. § 21.051; *Tex. Tech Univ. Health Sci. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 304 (Tex. 2020). "Generally, an employer commits an unlawful practice 'because of' an employee's [disability] if the employee's [disability] was 'a motivating factor' for the practice, 'even if other factors also motivated the practice.'" *Id.* at 305 (quoting section 21.125(a) of the Texas Labor Code). The TCHRA further provides that it is an unlawful employment practice for an employer to "fail or refuse to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability," unless the employer demonstrates the accommodation would impose an undue hardship. TEX. LAB. CODE ANN. § 21.128(a); *id.* § 21.128(c) (damages may not be awarded against an employer who demonstrates "good faith efforts, in consultation with the [disabled individual] who has informed [the employer] that accommodation is needed…."). Here, Goodlett brought a disability discrimination action under the TCHRA alleging a claim for discriminatory discharge/disparate treatment and a claim for failure to accommodate his intellectual disability during the investigation preceding his discharge.

To establish unlawful discrimination, a plaintiff may rely on either direct evidence of "what the defendant did and said" or on circumstantial evidence. *Flores*, 612 S.W.3d at 305; *Garcia*, 372 S.W.3d at 634. When, as here, a plaintiff relies on circumstantial evidence to establish a discrimination claim, we follow the burden-shifting framework the United States Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Flores*, 612 S.W.3d

at 305 (under *McDonnell Douglas* analysis, (1) the plaintiff must first create a presumption of illegal discrimination by establishing a prima facie case, (2) then, the defendant must rebut that presumption by presenting evidence establishing a legitimate, nondiscriminatory reason for the employment action, and (3) the plaintiff must then overcome the defendant's rebuttal evidence by establishing that the defendant's stated reason is a mere pretext).

Under the first step of this framework, "the plaintiff is entitled to a presumption of discrimination if she meets the 'minimal' initial burden of establishing a prima facie case of discrimination." *Garcia*, 372 S.W.3d at 634. While the particular elements of a prima facie case vary depending on the circumstances, the plaintiff's burden at the first stage is "not onerous." *Id.* (noting the *McDonnell Douglas* presumption is "merely an evidence-producing mechanism"). "The prima facie case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Id.* "For a plaintiff who proceeds along the *McDonnell Douglas* burden-shifting framework, the prima facie case is the necessary first step to bringing a discrimination claim under the TCHRA. Failure to demonstrate those elements means the plaintiff never gets the presumption of discrimination and never proves his claim. And under the language of Chapter 21 . . . that failure also means the court has no jurisdiction and the claim should be dismissed." *Id.* at 637. "While a plaintiff must plead the elements of her statutory cause of action—here the basic facts that make up the prima facie case—so that the court can determine whether she has sufficiently alleged a TCHRA violation, she will only be required to submit evidence if the defendant presents evidence negating one of those basic facts." *Id.* (citing *Miranda*, 133 S.W.3d at 228); *Flores*, 612 S.W.3d at 305 (TCHRA waives immunity from suit "only if the plaintiff alleges facts that would establish that the state agency violated the Act and, when challenged with contrary evidence, provides evidence that is at least sufficient to create a genuine fact issue material to that

allegation."). The plaintiff's burden of proof with respect to the jurisdictional facts does not involve "a significant inquiry into the substance of the claims," but "*some* inquiry is necessary because if TCHRA plaintiffs were allowed to stand on talismanic allegations alone, the constraining power of pleas to the jurisdiction would practically be eliminated." *Garcia*, 372 S.W.3d at 637-38.

### Discriminatory Discharge/Disparate Treatment Claim

To establish a prima facie case on a claim for disability discrimination based on disparate treatment, a plaintiff must show that: (1) he is a member of a protected class (i.e., physically or intellectually disabled); (2) he was qualified for the position at issue; (3) he was subjected to an adverse employment action; and (4) he was treated less favorably than other similarly situated employees who were not members of the protected class under nearly identical circumstances. *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). To establish the fourth element, Goodlett was required to identify a "comparator employee" who was not terminated but was similarly situated under nearly identical circumstances "in all material respects, including similar standards, supervisors, and conduct." *Id.* at 917-18. Circumstances are not considered "nearly identical" if they involve employees with different "work rule violations" or "disciplinary records." *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 594 (Tex. 2008). Even if an employee outside the protected class violates the same rules, he or she is not "similarly situated" unless their violation is of comparable severity. *Monarrez*, 177 S.W.3d at 918; *City of San Antonio, ex rel. City Public Services Bd. v. Gonzalez*, No. 04-08-00829-CV, 2009 WL 4981332, at * 4-5 (Tex. App.—San Antonio Dec. 23, 2009, pet. denied) (mem. op.).

In his petition, Goodlett alleges only that "the employees who encouraged and participated in the horseplay received no discipline." This allegation can be liberally construed as referring to

Rodriguez, Romero, and Castillo as comparator employees. Indeed, in his deposition, Goodlett, Sr. suggested that since Scott was terminated for his role in the horseplay, the other three coworkers should have likewise been terminated. However, the other three coworkers were not "similarly situated under nearly identical circumstances" because none of them pushed a coworker and none of them made prior threats of violence against a coworker. The evidence before the trial court on this element was undisputed that Goodlett was the only employee involved in the "horseplay" who pushed a co-worker, causing her to fall and sustain an injury. Goodlett consistently admitted that he pushed Castillo, although he did not intend to hurt her. In his deposition, Goodlett's father stated that Scott told him that he pushed Castillo. Even if we exclude Scott Goodlett's deposition from our consideration,[2] there is substantial and consistent evidence in the form of the coworkers' oral and written statements, the video of the incident, Goodlett, Sr.'s deposition, and Goodlett's verbal statements to de la Garza, Woods, and Wiley to establish that Goodlett pushed Castillo; there is no evidence, or even any allegation, that it was not Goodlett who pushed Castillo. The other three coworkers did not violate the same work rules as Goodlett during the incident and any rule violation by them was not comparable in its severity. Further, there was no allegation or evidence that any of the coworkers ever threatened violence against a coworker.

In Funk's affidavit, she described the NEISD's decision-making process that led to Goodlett's termination, stating,

> The decision to terminate Plaintiff's employment weighed heavily on me because I had seen firsthand the progress that Plaintiff had made while working at NEISD. Ultimately, I determined that NEISD could neither excuse nor tolerate Plaintiff's misconduct, and that he must be treated in the same manner as any other employee, irrespective of his disability. NEISD does not have a policy or practice that requires progressive discipline in all situations, and in my opinion, the situation did not warrant an attempt at progressive discipline because of the severity of Plaintiff's conduct. My decision was solely based on Plaintiff's misconduct, and I would have

---

[2] Because we exclude Scott Goodlett's deposition from our de novo review, we need not address his appellate issue arguing he lacked competency to testify.

recommended Plaintiff's termination even if he had not cooperated with the investigation, because his actions were ultimately confirmed by the other witnesses and the video of the incident.

With respect to whether there were other similarly situated employees, Funk stated,

> My decision to recommend Plaintiff's termination had nothing to do with his disability. I did not treat Plaintiff more harshly than other similarly situated employees. In fact, there have been no other similarly situated employees, as no other employee under my supervision at the Blossom Athletic Center has ever pushed another coworker, nor has any other employee threatened violence against his coworkers. If any other NEISD employee had engaged in conduct remotely similar to Plaintiff's, they would have likewise been terminated. After Plaintiff was terminated, NEISD did not hire a replacement, but instead reassigned a current employee to work in the location vacated by his termination.

In his petition, Goodlett alleges that NEISD terminated him "because he could not explain accurately what happened," i.e., he was terminated because of his intellectual disability. But the evidence is consistent and undisputed that Goodlett did repeatedly state what happened — he pushed Castillo. And his explanation of what happened was confirmed by the video and the eyewitness accounts of his coworkers; they all told the same version of events. That Goodlett may have been unable to adequately communicate *why* he pushed Castillo, or *how* exactly he pushed her, does not create a disputed fact issue on whether he pushed her, thereby violating NEISD's employee rules against such conduct.[3]

Even if we were to proceed beyond the first step of the *McDonnell Douglas* analysis NEISD produced evidence of a legitimate, nondiscriminatory reason for termination, and there is no evidence to show that NEISD's reasons for terminating Goodlett were pretextual or to show that animus toward Goodlett's disability was a motivating factor in NEISD's decision to terminate him. In addition to Funk's affidavit quoted above, Goodlett's father testified that he was not aware of any negative attitude at NEISD toward Scott or toward people with autism generally. Goodlett,

---

[3] Funk's affidavit and the exhibits thereto set forth the NEISD employee rules that Goodlett violated.

Sr. stated that his autistic daughter is also employed at NEISD and that the man Scott replaced was also autistic and had been in the position for thirty years.

Because Goodlett failed to establish the existence of any jurisdictional facts on the fourth element of his disparate treatment claim, or that Goodlett's intellectual disability was a motivating factor in the decision to terminate his employment, we conclude he has failed to establish a prima facie case and his claim must be dismissed for lack of subject matter jurisdiction. *See Garcia*, 372 S.W.3d at 636; *see also Clark*, 544 S.W.3d at 785.

### *Failure to Accommodate Claim*

As noted, one of the grounds for NEISD's plea to the jurisdiction was that Goodlett failed to exhaust his administrative remedies with respect to his failure-to-accommodate claim. *See* TEX. LAB. CODE ANN. § 21.201. Goodlett argues on appeal that the letters submitted by his attorney to the EEOC expanded the scope of the initial charge of wrongful discharge and an investigation into the failure to accommodate claim could have reasonably been expected to grow out of the initial EEOC charge. Even assuming, without deciding, that Goodlett exhausted his administrative remedies with respect to his failure-to-accommodate claim, he has failed to establish a prima facie case on the claim.

To establish a prima facie case of a failure-to-accommodate claim, a plaintiff must show that: (1) he had a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations. *Feist v. Louisiana, Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). "If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one." *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 164-65 (5th Cir. 1996) (it is the responsibility of the disabled person to inform the employer that an accommodation is needed).

In his petition, Goodlett alleges that NEISD "denied him accommodations which would have allowed him to communicate regarding what actually happened." As factual support, the petition alleges that when Goodlett's father arrived at Heroes Stadium, he found Goodlett in a meeting with his supervisors and a police officer and "[t]here was no one present to help Scott answer questions." The petition acknowledges that Goodlett's father was present with his son at the meeting with Wiley after the incident. The petition does not allege that Goodlett or his parents ever requested such an accommodation from NEISD. The evidence before the trial court was undisputed that neither Goodlett nor his parents ever requested that NEISD provide the "communication" accommodation referred to in his petition, or any accommodation at all, during Goodlett's employment. Goodlett, Sr. stated during his deposition that he never requested any accommodation from NEISD and there was no evidence that Scott himself ever asked for any accommodation. Because Goodlett failed to establish the existence of any jurisdictional facts of a request for an accommodation, he has failed to establish a prima facie case of failure to accommodate and his claim must be dismissed for lack of subject matter jurisdiction. *See Garcia*, 372 S.W.3d at 636-37.

## CONCLUSION

As the Supreme Court explained in *Flores*, "Texas law prohibits employers from taking adverse employment actions against employees *because* they are older [or disabled], but it doesn't [sic] prohibit them from taking such actions against employees *who* are older [or disabled]." *Flores*, 612 S.W.3d at 302. Like the plaintiff in *Flores*, Goodlett failed to establish a prima facie case that NEISD terminated his employment *because* he was disabled, rather than because of his misconduct, or that NEISD treated him disparately by terminating him or failed to provide a requested accommodation. "Because the Legislature has not waived governmental immunity in the absence of such evidence," we affirm the trial court's order granting NEISD's plea to the

jurisdiction and dismissing Goodlett's claims with prejudice. *See id.*; *see also Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006) (absent a valid statutory waiver of immunity, the court lacks jurisdiction and dismissal with prejudice is proper).

Liza A. Rodriguez, Justice