

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00160-CV

———————————————

THE CITY OF ARLINGTON, Appellant

V.

CHRISTOPHER EVANS, Appellee

---

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-331331-22

---

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I. Introduction

In a single issue, Appellant The City of Arlington challenges the denial of its plea to the jurisdiction directed at a suit filed by Appellee Christopher Evans. Evans sued the City for property damage and personal injuries that he claims resulted from a collision in which his vehicle was struck by a vehicle owned by the City. The City responded to the suit by filing a plea to the jurisdiction in which it argued that the trial court lacked subject-matter jurisdiction because Evans failed to give the City timely formal notice of his claim and because the City also lacked actual awareness that Evans claimed that he was injured in the accident. The trial court denied the City's plea to the jurisdiction. That denial was error.

Under the statutory scheme mandated by the Civil Practice and Remedies Code, a jurisdictional prerequisite to a suit against a governmental unit is either timely formal notice of a claim or timely actual notice—with actual notice requiring subjective awareness of the claim by the governmental unit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.101. There is no dispute that Evans did not provide the City with timely formal notice of his claim. The evidence that the City attached to its plea to the jurisdiction established that there was no evidence that it had actual, subjective awareness that Evans claimed that he was injured. Evans responded with his own evidence, which he claims should establish actual awareness of his injuries at the time of the accident or when he was later arrested by an Arlington police officer. But that

2

evidence failed to carry Evans's burden. This record—whether viewed through the prism of presenting a legal or a factual issue—fails to support the conclusion that the City had timely actual awareness of Evans's injury claim. Without timely notice to the City that Evans claimed that he was injured, the trial court lacked subject-matter jurisdiction over his personal-injury claim. Thus, we reverse the trial court's order denying the City's plea to the jurisdiction, and we render judgment dismissing solely the portion of Evans's suit seeking personal-injury damages.[1]

## II. Factual and Procedural Background

The procedural background of this matter is straightforward. Evans filed suit against the City claiming property and personal-injury damages as the result of a motor-vehicle collision caused by the allegedly negligent operation of a truck owned by the City.[2] The City answered and asserted that it did not have statutory notice of

---

[1]We do not dismiss the portion of Evans's suit seeking property damages. The City had actual notice of damage to Evans's vehicle. The Texas Supreme Court has held that

> it is proper for a trial court to dismiss claims over which it does not have subject[-]matter jurisdiction but [to] retain claims in the same case over which it has jurisdiction. A trial court is not required to deny an otherwise meritorious plea to the jurisdiction or a motion for summary judgment based on a jurisdictional challenge concerning some claims because the trial court has jurisdiction over other claims.

*Thomas v. Long*, 207 S.W.3d 334, 338–39 (Tex. 2006) (citations omitted).

[2]Evans's petition describes various acts of negligence allegedly committed by Texas Pest Elimination Services, LLC. We assume that the reference to Texas Pest is a typographical error.

Evans's personal-injury damage claim and thus that the City's "governmental immunity ha[d] not been waived." The City then filed pleas to the jurisdiction reemphasizing that it had neither formal notice nor actual awareness of Evans's personal-injury claim within the period required by statute or the City's charter and attached evidence supporting the assertion that no actual notice existed. Evans responded to the City's plea to the jurisdiction and attached evidence. The trial court denied the City's plea. The City perfected an interlocutory appeal from the order.[3]

Factually, it is undisputed that a Ford F-450 and a trailer owned by the City and operated by a City employee struck and damaged the back of Evans's car.[4] It is also undisputed that a City police officer who investigated the collision filed a report opining that the driver of the City vehicle had "failed to control the speed of [his] vehicle." Finally, there is no dispute that Evans failed to give formal notice of his claim within the time period required by statute and the City's charter.[5]

---

[3]This court has jurisdiction over an interlocutory appeal when the trial court "denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001" of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8).

[4]The City's brief describes the accident as minor based on notations contained in the police report: *See* "Defendant City of Arlington's Plea to the Jurisdiction, Exhibit 5, Texas Peace Officer's Crash Report, C.R. 65 (describing the damage to Plaintiff's vehicle as '1' and the damage to Arlington's vehicle as '0')." Because the City's evidence failed to provide any means of deciphering the notations on the report, we are unable to independently interpret the various codes used in it.

[5]The City's Charter in Article X, entitled "Miscellaneous Provisions," provides,

4

Instead, the parties' dispute centered on whether the facts established that the City had actual awareness that Evans was physically injured in the accident. That dispute focused on events that occurred at the accident scene or some weeks after the accident when the same officer who investigated the accident arrested Evans for outstanding warrants.

With respect to what occurred at the scene, a "crew leader" from the City's department that is responsible for supervising the driver of the City vehicle that was involved in the accident signed an affidavit (which was attached to the City's plea to the jurisdiction) stating that he was called to the scene of the collision on the morning that it occurred. The crew leader's affidavit recounted that he had made certain observations and had taken certain actions at the scene:

> 5. When I arrived at the scene of the accident, my crew member and Christopher Evans were away from their vehicles and talking inside the nearby gas station. Neither my crew member nor Christopher Evans appeared injured.

---

> **Section 6.  <u>Claims of Damages</u>:** The City shall not be liable on account of any claim for death, injury[,] or damages to any person or property unless the person asserting such claims, or their representative, shall give the City written notice of such claim by filing such written notice with the City Secretary within one hundred eighty (180) days from the time the incident causing such death or damages occurred, with a statement of facts reasonably sufficient to form a basis of an intelligent investigation, and no suit shall be instituted or maintained on any such claim until the expiration of ninety (90) days from the time such notice shall have been filed. (Adopted by Charter Amendment, May 10, 1988)

City of Arlington, https://www.arlingtontx.gov/city_hall/documents___permits/city_charter (last visited on Sept. 29, 2022).

6. As part of safety procedures, I asked if anyone was injured. Neither my crew member nor Christopher Evans reported any injuries to me.

7. I informed the parties that safety procedures required me to call a Police Accident Investigator to the scene. Upon hearing this, Christopher Evans stated that he needed to leave and left the scene.

8. I called 911 to report the accident. I informed the Emergency Dispatcher that no one reported injuries at the accident. [Quotation marks omitted.]

The officer who was called to the scene filed a report of his investigation of the accident. The report also included a narrative that stated in part,

When I arrived[,] the driver of Unit 3 [Evans] left the scene and had a fake license plate on the vehicle. The driver of Unit 3 and the VIN from Unit 3 was determined two weeks later when I arrested the driver of Unit 3 driving the same vehicle for outstanding warrants. The driver of Unit 3 did not claim injury.

In Evans's response to the City's plea to the jurisdiction, he countered with his own unnotarized affidavit in which he stated that he had remained at the accident scene and had spoken with the driver of the City vehicle and had then remained "at or near" the scene for fifteen minutes until the crew leader arrived. Evans's affidavit continued,

5. No employee of the City of Arlington asked me if I had sustained any bodily injuries after the incident.

6. To the contrary, I exhibited signs of physical injury to m[y] knees, neck, and back to employees of the City of Arlington while on scene of the incident on January 13, 2020.

7. Both the driver of the F[-]450 and [the] Crew Leader for the City of Arlington told me that they did not have the "blue card" or insurance

6

information card required to be given to me to report facts and details surrounding the incident. [Quotation marks omitted.]

The trial court's order denying the City's plea to the jurisdiction contains the following language describing what the court had considered in deciding the City's plea and making its dispositive finding:

> After due consideration of the arguments of the parties and their counsel, and the pleadings and affidavits on file herein, the [c]ourt finds that [Evans] gave proper notice under Texas Civil Practice and Remedies Code 101.101(c) and as such this [c]ourt has jurisdiction over the Defendant City of Arlington with respect to [Evans's] claims.

## III. Analysis

**A.  The City is immune from suit, and the trial court lacks subject-matter jurisdiction to hear Evans's claim if the City did not receive appropriate notice of his claim; in this case, the notice that was required was actual subjective awareness on the part of the City that Evans had suffered some injury in the accident.**

Governmental immunity is the long-established common-law doctrine that categorically bars suits for money damages against municipalities unless the legislature has consented to suit. *See City of Austin v. Leggett*, 257 S.W.3d 456, 460 (Tex. App.—Austin 2008, pet. denied) (first citing *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007); then citing *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006); and then citing *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (op. on reh'g)). The municipality derives its immunity from the State because it is a political subdivision of the State:

> Political subdivisions of the state—such as counties, cities, and school districts—are not sovereign entities, but under the governmental-

immunity doctrine, they share the state's immunity when performing governmental functions as the state's agent. Governmental immunity applies to municipalities . . . because they are quasi-public in nature with powers "pertaining to the administration of general laws made to enforce the general policy of the state." And when enforcing the state's laws, municipalities "stand as does sovereignty, whose agents they are."

*Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 746 (Tex. 2019) (footnotes omitted).[6] But immunity is waived under the Tort Claims Act for automobile accidents because a "governmental unit in the state is liable" for "property damage" and "personal injury" caused by the negligence of the unit's employees arising "from the operation or use of a motor-driven vehicle." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(A).

However, the Tort Claims Act also contains a notice provision, and notice of a claim is a jurisdictional prerequisite for a trial court to have subject-matter jurisdiction over a suit asserting a claim for which a municipality holds immunity. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 77 (Tex. 2019); *see* Tex. Gov't Code Ann. § 311.034 ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.").

The notice provision of the Tort Claims Act envisions notice in one of two ways—either formal notice of the claim within six months after the incident at issue occurred or actual notice of the same type of information that formal notice would have provided and within the same time frame:

---

[6]Evans does not challenge the fact that the City's employee who struck him was performing a governmental function at the time of the accident.

(a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:

> (1) the damage or injury claimed;
>
> (2) the time and place of the incident; and
>
> (3) the incident.

(b) A city's charter and ordinance provisions requiring notice within a charter period permitted by law are ratified and approved.

(c) The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

Tex. Civ. Prac. & Rem. Code Ann. § 101.101. The notice provision carries out a vital purpose because it ensures "the prompt reporting of claims to enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial." *City of San Antonio v. Rocha*, No. 04-18-00367-CV, 2018 WL 6517169, at *2 (Tex. App.—San Antonio Dec. 12, 2018, no pet.) (mem. op.) (citing *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995)).

As noted, Evans does not contend that he gave the City formal notice of his claim within the six-month deadline prescribed by Section 101.101(a). Instead, he argues that the facts establish that the City had actual notice that he had "received some injury" when he was hit by the City's vehicle. What constitutes actual notice is a fact-based inquiry. *Worsdale*, 578 S.W.3d at 77. When a claimant fails to give formal

9

notice and instead relies on the fact-intensive determination of actual notice, the claimant "must live with the uncertainty that is inherent in the actual-notice exception." *Id.* at 76.

To impart actual notice, a municipality must know more than that an incident has occurred. *Id.* at 72 ("But mere knowledge that something happened somewhere to someone or something would hardly ever be enough to alert a governmental unit of alleged wrongdoing and the necessity of mounting a defense."); *City of Houston v. Musyimi*, No. 01-21-00670-CV, 2022 WL 2919724, at *5 (Tex. App.—Houston [1st Dist.] July 26, 2022, no pet.) (mem. op.) ("But it is well-established that a governmental unit's awareness of an accident, without more, is not sufficient to show that it had subjective knowledge of any personal injuries sustained in the accident.").[7]

---

[7]A prior opinion by this court suggested that notice of the incident may impart notice of injury. *See City of Wichita Falls v. Jenkins*, 307 S.W.3d 854, 861 (Tex. App.—Fort Worth 2010, pet. denied). As another court of appeals has pointed out, our statement regarding notice of injury from the fact of an accident was dicta, and our statement is contrary to a later holding by the Texas Supreme Court:

> *Jenkins* is also inapposite because the *Jenkins* court held that the city clerk was actually provided timely formal notice of the claim in that case. *Id.* at 858–61. Therefore, the *Jenkins* court's statements regarding actual notice are not necessary to the disposition of the appeal and are obiter dicta. *See id.* [Appellee] cites *Jenkins* for the proposition that actual notice includes notice "to the extent that a prudent entity could ascertain its potential liability stemming from an incident, either by conducting further investigation or because of its obvious role in contributing to the incident." *Id.* at 858. But, we may not follow this legal standard because it has been disapproved by the Supreme Court of Texas. *See* [*Tex. Dep't of Crim. Justice v.*] *Simons*, 140 S.W.3d [338,] 346–48 [(Tex. 2004)].

10

Nor is the standard of actual notice met by claiming that if the governmental unit had initiated an investigation, the investigation would have revealed the same elements that formal notice would have provided—constructive notice is not sufficient. *See Simons*, 140 S.W.3d at 347–48 ("It is not enough that a governmental unit should have investigated an incident as a prudent person would have, or that it did investigate, perhaps as part of routine safety procedures, or that it should have known from the investigation it conducted that it might have been at fault."); *Musyimi*, 2022 WL 2919724, at *5 (stating that "in assessing actual notice, the Supreme Court of Texas has expressly rejected a standard that would require a governmental unit to engage in further inquiry or investigation, recognizing that such a broad interpretation would defeat the purpose of the notice provision" and that "'[p]otential or constructive notice is not enough' for actual notice").

What is required is "actual, subjective awareness" of the claimed injury. *City of San Antonio v. Cervantes*, 521 S.W.3d 390, 394 (Tex. App.—San Antonio 2017, no pet.). The First Court of Appeals described the characteristics of the awareness of injury that the governmental entity must have as follows: "[T]he governmental unit must have subjective awareness of the claimed injury. Potential or constructive notice is not enough. To have actual notice, the governmental unit not only must have knowledge of some injury but also [must have] information sufficient to identify the

*City of Houston v. McGowen*, No. 14-13-00415-CV, 2014 WL 2039856, at *7 (Tex. App.—Houston [14th Dist.] May 15, 2014, no pet.) (mem. op.).

11

loss ultimately alleged." *Jones v. Bd. of Trs. of Galveston Wharves*, 605 S.W.3d 641, 643 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (citations omitted); *see also City of Houston v. Villafuerte*, No. 01-21-00517-CV, 2022 WL 2976233, at *4 (Tex. App.—Houston [1st Dist.] July 28, 2022, no pet. h.) (mem. op.) (stating that "a governmental unit has actual notice . . . if it has subjective awareness of '(1) a death, injury, or property damage; (2) the governmental unit's alleged fault that produced or contributed to the death, injury, or property damage; and (3) the identity of the parties involved'" (quoting *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 776 (Tex. 2018))). This subjective awareness need not rise to an absolute certainty of the nature and extent of the injury, and circumstantial evidence may be relied on to prove the existence of subjective awareness. *Rocha*, 2018 WL 6517169, at *4.

**B.** **We set forth the path we must follow to determine the standard of review that applies to the resolution of this appeal.**

After having given an overview of the requirements under Section 101.101(c) that Evans must meet to establish that the City had actual subjective awareness of his injury claim, we set out the standards that govern our review of this appeal. This requires an examination of the somewhat byzantine decision tree for the review of jurisdictional issues. We will ultimately conclude that whether decided as a legal issue or a factual issue, the trial court erred by finding and concluding that the City had subjective awareness of Evans's personal-injury claim.

12

The City's plea to the jurisdiction was a proper vehicle to raise its jurisdictional challenge. *See Musyimi*, 2022 WL 2919724, at *5. It is a plaintiff's burden to demonstrate that the trial court has jurisdiction. *City of San Antonio v. Smith*, 562 S.W.3d 75, 81 (Tex. App.—San Antonio 2018, pet. denied) (citing *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012)); *see also Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) ("A plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction. That burden encompasses the burden of establishing a waiver of sovereign immunity in suits against the government." (citations omitted)).

When, as here, it is necessary for the trial court to review evidence in making the jurisdictional determination, the court may do so and is not limited to a review of the pleadings. *Smith*, 562 S.W.3d at 81 ("When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court considers the relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised." (citing *Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 806 (Tex. App.—Austin 2009, no pet.))).

But the scope of the evidence introduced affects how a plea to the jurisdiction should be resolved and who functions as the factfinder. The effect of the evidence's scope depends on whether it falls into one of two categories, which are described as follows: "(1) those in which the jurisdictional issue or facts do not substantially implicate the merits of the plaintiff's case, but rather are, for the most part, separate

13

and distinct from the merits; and (2) those in which the jurisdictional issue or facts implicate the merits of the plaintiff's case." *Poindexter*, 306 S.W.3d at 806. The overarching test to determine whether the facts fall into the latter category is that "many if not most of the challenged jurisdictional facts will also determine whether the plaintiff is entitled to relief on the merits of her case." *Id.* at 807.

Which of the two slots the facts fall into determines who will determine their effect. When the evidence does not implicate the merits, the trial court acts as factfinder—if a fact question is presented. *Id.* at 806. Facts that implicate the merits of the plaintiff's claim take a different path:

> [In] cases in which the jurisdictional issue or facts *do* implicate the merits of the plaintiff's case, the trial court does not act as a factfinder. Instead, the defendant is put to a burden very similar to that of a summary[-] judgment movant. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction[,] and the fact issue will be resolved by the factfinder at trial.

*Smith*, 562 S.W.3d at 81 (citations omitted).

And the treatment of the facts that do not implicate the merits obviously varies depending on whether they are disputed or not. *Id.* "[W]hen the relevant jurisdictional facts are undisputed, the trial court makes the jurisdictional determination as a matter of law based solely on those undisputed jurisdictional facts." *Id.* Again, a plaintiff may rely on circumstantial evidence to prove notice; "actual notice can be determined as a matter of law, even 'when subjective awareness must be proved, if at all, by circumstantial evidence.'" *Worsdale*, 578 S.W.3d at 66

(citing *Simons*, 140 S.W.3d at 348). We review legal determinations based on undisputed evidence de novo. *Musyimi*, 2022 WL 2919724, at *4 ("Because the jurisdictional evidence is undisputed, we review the actual-notice issue de novo as a question of law."); *see also Tenorio*, 543 S.W.3d at 776 ("Whether a governmental unit has actual notice is a fact question when the evidence is disputed, but it is a question of law when the evidence is undisputed.").

When the facts are disputed, the trial court makes express or implied fact findings that determine the plea to the jurisdiction. *Musyimi*, 2022 WL 2919724, at *4. We review the trial court's express or implied resolution of disputed facts to determine whether they are supported by sufficient evidence. *Worsdale*, 578 S.W.3d at 66 (stating that "when the jurisdictional issue is not intertwined with the merits, we must defer to the trial court's express or implied factual determinations that are supported by sufficient evidence"). Thus, we apply the usual standards of legal- and factual-sufficiency review to determine whether the evidence supports the trial court's express or implied fact findings. *Villafuerte*, 2022 WL 2976233, at *2 ("On appeal, the trial court's jurisdictional fact findings may be challenged for legal and factual sufficiency."); *City of San Antonio v. Hurón*, No. 04-19-00570-CV, 2020 WL 3065426, at *3 (Tex. App.—San Antonio June 10, 2020, pet. denied) (mem. op.) ("[O]n appeal, any fact findings made to resolve the jurisdictional issue may be challenged, as any other fact findings, for legal and factual sufficiency.").

15

Here, the evidence does not implicate the merits of Evans's claim; whether the City had notice of his injury does not implicate facts that are determinative of whether he can recover on the merits. And, ultimately, we conclude that agonizing over the question of whether to resolve this appeal as a matter of law or as a factual matter is of little consequence. The City made an initial showing that there was no evidence that it had subjective awareness that Evans was injured. Evans—ineffectually—attempted to offer evidence to rebut that state of the evidence. His evidence did not materially rebut that the City lacked awareness, or stated differently, his evidence of the City's awareness did not rise above a scintilla. Thus, we can view the evidence as undisputed and resolve this appeal as a matter of law or view it as a factual dispute in which Evans failed to rebut what the City had established, with the latter approach producing a failure of the evidence to support the trial court's implied finding that the City had awareness. Both paths lead to the same end—an absence of the notice required by Section 101.101(c) for the trial court to have subject-matter jurisdiction.[8]

---

[8]The City's opening brief addresses an argument that Evans made in the trial court but has now abandoned; the City notes Evans's change of position in its reply brief. The City addresses the argument that so long as a governmental unit has knowledge of property damage, it has actual knowledge of any other claim—such as a personal-injury claim—later made by a plaintiff. This argument turns on the fact that Section 101.101(a) and (c) are phrased in the disjunctive, i.e., requiring formal notice of "the damage or injury claimed" or actual notice "that the claimant has received some injury[] or that the claimant's property has been damaged." Tex. Civ. Prac. & Rem. Code Ann. § 101.101(a), (c). We agree with the City that a host of cases reject the argument that notice of one is notice of the other. *See Cervantes*, 521 S.W.3d at 397 (when personal-injury claim is alleged, Section 101.101 requires notice of claim being made); *Oswalt v. Hale Cnty.*, No. 07-21-00050-CV, 2022 WL 93613, at *3 (Tex. App.—

16

**C.** **Based on the record before us, the trial court erred by denying the City's plea to the jurisdiction challenging that court's jurisdiction to hear Evans's personal-injury claim.**

We begin by briefly re-summarizing the evidence before the trial court. The City offered the affidavit of the crew leader of the City employee who had operated the truck that struck Evans's car. When the crew leader arrived at the scene, he observed both his crew member and Evans; neither appeared injured. The crew leader asked if either his crew member or Evans were injured; neither "reported any injuries" to him. When he mentioned that the police would have to be called to the scene, Evans "stated that he needed to leave and left." The crew leader then called 911 and stated that "no one [had] reported injuries at the accident." Additionally, though we do not know whether the investigating officer reported what he had been told at the scene after Evans left or what Evans told the officer when he arrested him some weeks later, the officer's report stated, "The driver of Unit 3 [Evans] did not claim injury."

---

Amarillo Jan. 10, 2022, no pet.) (mem. op.) ("As the *Cervantes* court points out, it is the *claim* about which the governmental unit is entitled to notice and the claim in *Cervantes* as well as in the present case is a claim for personal injuries. . . . As such, actual notice of a claim for property damage does not equate to actual notice of personal injury."); *see also Musyimi*, 2022 WL 2919724, at *6 ("We agree with the *Oswalt* court that, not only does [S]ection 101.101's language require notice of both a plaintiff's property[-]damage and personal[-]injury claim, but such a construction also serves the notice requirement's purpose."); *Villafuerte*, 2022 WL 2976233, at *6 ("Because a governmental unit is entitled to a reasonable description of the damage or injury claimed, notice of one type of claim does not constitute notice of another, different claim.").

If this were the extent of the record, we would conclude this appeal as a matter of law because there is no evidence that the City had a subjective awareness of Evans's claimed injury. As an analogy, we look to the First Court of Appeals's opinion in *Jones*. 605 S.W.3d at 644. In *Jones*, the plaintiff fell due to the presence of water on the surface that she was walking on. *Id.* A security guard told the investigating officer that the plaintiff's knee and leg were red after the fall, but when the officer then contacted the plaintiff, she "told the officer that she was ambulatory, was not injured, and did not need medical assistance." *Id.* *Jones* summarized why it had concluded that the record did not impart subjective awareness of any personal injury to the governmental unit:

> On this spare record, we hold that the officer's investigation did not provide the Port with actual notice of Jones's claim as a matter of law. Standing alone, the fact that Jones's fall was investigated does not establish notice. The investigation did not make the Port subjectively aware that Jones had been injured, let alone give the Port information sufficient to identify the loss that she eventually asserted in her lawsuit. Jones affirmatively disclaimed injury. The investigation showed no more than that Jones fell, got back to her feet and departed, disavowed any injury, and declined medical assistance. That's not enough to give the Port actual notice of an injury. As the Supreme Court has observed, "mere knowledge that something happened somewhere to someone" does not satisfy the Tort Claims Act's actual-notice requirement.

*Id.* (citation omitted).

Though the evidence offered by the City is also spare, it shares the same characteristics as that in *Jones*: (1) there was an automobile accident; (2) Evans displayed no injuries and reported none; and (3) when he was informed the police

18

would be called, he left the scene. Thus, the City's evidence shows that though there was an accident, the City had no subjective awareness of an injury to Evans because he manifested and reported none.

But here, we are dealing with a different situation than *Jones* because Evans filed his own affidavit in opposition to the City's plea to the jurisdiction. Though the parties do not put it in these terms, the question is whether Evans offered more than a scintilla of evidence to create a fact issue on the question of the City's subjective awareness, which in turn would make the issue a fact question for the trial court and thus support its implied finding that the City was aware of Evans's alleged personal injury.[9] To accomplish all of these tasks, Evans's affidavit stated that no City employee "asked [him] if [he] had sustained any bodily injuries after the incident" and that he had "exhibited signs of physical injury to [his] knees, neck, and back to employees of the City of Arlington while on scene of the incident."[10]

---

[9]We will sustain a legal sufficiency challenge if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Rsch. Corp.*, 299 S.W.3d 106, 115 (Tex. 2009) (quoting *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006)).

[10]Evans's affidavit also stated that "[b]oth the driver of the F[-]450 and [the] Crew Leader for the City of Arlington told [him] that they did not have the "blue card" or insurance information card required to be given to [him] to report facts and details surrounding the incident." We are left in the dark about what Evans hoped to

Even if we accept as true that no one asked Evans if he was injured, the City's evidence still stands that he did not appear injured, that he reported no injury, and that he left the scene when informed that the police were being called to the accident scene. So the question becomes whether Evans's assertion—that he "exhibited" injuries—carries the day. It was Evans's choice to use a word as vague as "exhibit" in his affidavit. The definition of "exhibit" is merely "to present to view." *See* Merriam-Webster, https://www.merriam-webster.com/dictionary/exhibit (last visited Sept. 30, 2022). We do not know how Evans presented his alleged injuries because he does not tell us. Did he limp; was a portion of his body red; or did he state to the City's employees, "I am hurt"? Evans's choice to use a word so vague as "exhibit" leaves us without any means to determine whether the form of exhibition that he made created the subjective awareness of an injury that is required to meet the standards of Section 101.101(c). For this reason, Evans's assertion does not constitute more than a scintilla of evidence of the level of notice that he allegedly gave the City.

Thus, from one perspective, the record lacks sufficient evidence to create a factual dispute, and we may conclude as a matter of law that the City lacked actual, subjective awareness of Evans's personal-injury claim. Or from a factual perspective, the record does not contain sufficient evidence to support the trial court's implied finding that the City had the same type of notice that it would have received had

establish with this statement. Nothing in Section 101.101 or the Arlington City Charter requires the City to provide a plaintiff with the means to report an injury.

20

Evans sent the City a timely formal notice of his personal-injury claim. Evans finds himself in the unfortunate situation of those who fail to give formal notice of a claim and instead leaves the fate of the litigation to the uncertain—and in this case, unavailing—effort to establish that a governmental unit had subjective awareness.

For the sake of completeness, we also address Evans's arguments suggesting that circumstantial evidence supports a finding that the City had subjective awareness of his personal-injury claim. This argument appears to take two forms. First, Evans argues that the City intentionally avoided asking him if he was injured, that we should infer that the City knew that he was injured, and that the City was attempting to turn a blind eye to that fact.[11] This argument is, in essence, that the City had a duty to investigate and to determine whether Evans was injured. A governmental unit has no such duty. *See Musyimi*, 2022 WL 2919724, at *5.

Evans's next circumstantial argument is that we should infer awareness from the fact that the police report, apparently written after Evans's arrest some weeks after the accident, mentions that he did not claim an injury. To quote Evans's brief,

> Furthermore, the crash report completed by Officer J. Hawthorne is evidence that the City of Arlington was aware of the connection made as they made it a point to mention that Mr. Evans ["]did not claim

_____

[11]Evans specifically argues that

[t]he City of Arlington's reluctance and failure to directly ask Mr. Evans[] about his physical injuries in conjunction with his Affidavit stating [that] he exhibited signs of physical injury to City of Arlington Employees provide for circumstantial evidence of their subjective awareness of Mr. Evans'[s] ultimate claims for personal injury.

21

injury[."]  The City of Arlington had multiple opportunities to ask Mr. Evans directly if he had any injuries stemming from the incident[] but willfully refrained from doing so.  Mr. Evans had received medical treatment five (5) times from the date of the incident to his subsequent arrest in February by Officer J. Hawthorne of the Arlington Police Department.

> If the City of Arlington had no subjective awareness of Mr. Evans'[s] connection between the incident in question and his personal injuries, why would [it] make a note of it in [its] crash report for an arrest that occurred roughly three (3) weeks [after] the incident?  The City of Arlington, in [its] effort[] to turn a blind eye to Mr. Evans'[s] personal[-]injury claim, provided [its] knowledge and subjective awareness of Mr. Evans'[s] ultimate claim for personal injury.  [Footnote omitted.]

Again, Evans turns to the willful-blindness argument that we have already rejected. He then augments that argument with evidence of medical treatment that, even if helpful to his argument, we cannot consider because it is not part of the appellate record.  *See Quorum Int'l v. Tarrant Appraisal Dist.*, 114 S.W.3d 568, 572 (Tex. App.—Fort Worth 2003, pet. denied) ("We cannot look outside the record in an effort to discover relevant facts omitted by the parties; rather, we are bound to determine this case on the record as filed.").

We also reject the inference that Evans attempts to draw with his question: "[i]f the City of Arlington had no subjective awareness of Mr. Evans'[s] connection between the incident in question and his personal injuries, why would [it] make a note of it in [its] crash report for an arrest that occurred roughly three (3) weeks [after] the incident?"  A sneaking suspicion does not carry Evans's burden that the City had subjective awareness of an injury.  *See Hanson v. Fort Worth & Western R.R. Co.*, No. 02-

22

21-00244-CV, 2022 WL 1043130, at *8 (Tex. App.—Fort Worth Apr. 7, 2022, no pet.) (mem. op.) (stating that circumstantial evidence, which supports multiple inferences or which is too meager to support that an inference should be drawn, is no evidence). There are a number of inferences that can be drawn from the timing of the report, such as that the officer was reminded by Evans's arrest of the need to prepare the report or that the officer had a certain time period in which to prepare the report and that such period had not lapsed by the time he made the report following Evans's arrest. And Evans attempts to draw an inference that contradicts the evidence he cites, that is, the City had awareness because it stated that it did not have awareness. That inference is too attenuated to do the lifting that Evans wants it to do—the City must be lying because it said that it did not have awareness.

## IV. Conclusion

It is undisputed that the City did not receive timely formal notice of Evans's personal-injury claim. We conclude as well that the City did not have timely subjective awareness of that claim. The trial court erred by denying the City's plea to the jurisdiction challenging its subject-matter jurisdiction to hear Evans's personal-injury claim based on that court's finding that Evans "gave proper notice under Texas Civil Practice and Remedies Code [Section] 101.101(c)." We therefore reverse the trial court's order denying the City's plea to the jurisdiction and render judgment

23

dismissing the portion of Evans's suit seeking personal-injury damages for lack of subject-matter jurisdiction.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: October 6, 2022