

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00538-CV

———————————————

TERRY GORDON AND STEVEN SHARP, Appellants

V.

NORTH TEXAS TOLLWAY AUTHORITY, Appellee

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 23-10123-431

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

This case stems from a late-night collision on a Texas toll road. An employee of Appellee North Texas Tollway Authority (NTTA) was attempting to block off a traffic lane due to roadway debris when Appellants Terry Gordon and Steven Sharp (together, the Motorcyclists) collided with the employee's truck. The Motorcyclists sued under the Texas Tort Claims Act (the Act), but NTTA asserted immunity based on the Act's emergency-response exception, and the trial court granted NTTA's plea to the jurisdiction.

The Motorcyclists now present the immunity question for our review. They claim that NTTA bore the burden to conclusively negate jurisdiction and that it failed to carry its burden by (1) failing to establish that its employee was responding to an emergency at the time of the collision and (2) failing to disprove that the employee's actions were reckless. *See generally* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). But the burden was on the Motorcyclists—not NTTA. And when the Motorcyclists responded to NTTA's plea to the jurisdiction, they did not dispute that NTTA's employee was responding to an emergency, nor did they produce any evidence that his actions had been reckless. Because the Motorcyclists failed to raise a fact issue regarding their relied-upon waiver of immunity, we will affirm.

## I. Background

The Motorcyclists were injured when they collided with an NTTA employee's truck around 2:30 a.m.

Just before the collision, the NTTA employee had been dispatched to another vehicle accident in the area, and he had parked in the leftmost lane of the roadway, which had already been blocked off. The employee later recalled activating his truck's flashing blue and yellow emergency lights as well as his truck's cab-mounted, illuminated sign that "alternated every few seconds between displaying the words 'ACCIDENT AHEAD' and displaying a large yellow arrow pointing to the right."

After communicating his location to NTTA's radio dispatcher, the employee was instructed to move his truck one lane to the right to block another lane of traffic due to debris further up the roadway. According to the employee, he twice "looked in front of, to each side of, and behind [his] NTTA [truck], checking for traffic and other obstructions" and "allow[ing] the close vehicles coming from behind to pass" until "it looked to [him] like there was sufficient room to move safely into the next lane." He did not use a turn signal, however, because, as he later explained, the truck's flashing emergency lights were wired to its brake lights, rendering the turn signals inoperable. Nonetheless, when the headlights approaching from behind appeared to be a "considerable distance" away, the employee "slowly began to move to the right." As he did so, the Motorcyclists ran into him.

The Motorcyclists sued, invoking the Act and alleging that the employee had been not only negligent but also reckless because he had slowly changed lanes into the path of high-speed, oncoming traffic. NTTA filed a plea to the jurisdiction based on the Act's emergency-response exception. *See generally id.* NTTA offered evidence that

3

its employee had been responding to an emergency at the time of the collision, it asserted that "[i]t was [the Motorcyclists'] burden to negate the [emergency-response exception's] applicability," and it claimed that the Motorcyclists had "yet to identify any evidence" to dispute the emergency-response context or to demonstrate that the employee had acted recklessly. When the Motorcyclists answered the plea, they did not deny that the NTTA employee had been responding to an emergency at the time of the collision. Rather, they asserted that his actions had been reckless, and they offered evidence purporting to show as much.

After considering the parties' jurisdictional evidence—two affidavits from the NTTA employee, an excerpt from his deposition, purported "still shots" from an area traffic camera,[1] and the relevant crash reports—the trial court granted NTTA's plea and dismissed the Motorcyclists' claim for want of jurisdiction.

## II. Standard of Review and Governing Law

We review a trial court's ruling on a plea to the jurisdiction de novo. *See City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). Such a plea may be used by a governmental entity to assert its immunity from suit. *Id.*; *see Rattray v. City of Brownsville*, 662 S.W.3d 860, 867–68 (Tex. 2023).

Generally, subdivisions of the State of Texas, such as NTTA, *see* Tex. Transp. Code Ann. § 366.032, are immune from suit absent a clear waiver of immunity. *See*

---

[1]The "still shots" were not authenticated and were only briefly identified in the Motorcyclists' jurisdictional response. However, NTTA did not object to them.

*Maspero*, 640 S.W.3d at 528. The Act waives immunity for certain torts that arise from a governmental employee's operation or use of a motor vehicle. Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1). But what the legislature giveth, it also taketh away, and the Act withdraws the waiver of immunity if the employee's injury-causing actions occur while he is responding to an emergency call or reacting to an emergency situation. *Id.* § 101.055(2); *see Rattray*, 662 S.W.3d at 867 (noting that "[t]he Act may waive immunity in one breath and in the next take back part of the waiver"). The withdrawal comes with caveats of its own, though. As relevant here, the governmental entity retains its immunity from suit unless the employee's actions are "taken with conscious indifference or reckless disregard for the safety of others."[2] Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2); *Powell*, 704 S.W.3d at 448–49 (discussing emergency-response exception and emphasizing that it applies "*unless*" a carveout is shown). In effect, the Act provides a waiver of immunity, then it creates an emergency-response exception to the waiver, then it carves out a recklessness exception to the emergency-response exception. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2).

---

[2]If a specific law or ordinance governs the employee's emergency action, then the Act requires the employee's action to have been in compliance with that law or ordinance to maintain immunity. Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). This alternative is not at issue here; it was not raised below and neither party has identified a relevant law or ordinance. *See City of Austin v. Powell*, 704 S.W.3d 437, 451 (Tex. 2024) (discussing alternative carveout to emergency-response exception and stating that, "[w]here neither party can point to such a law, . . . the [alternative] is irrelevant to dislodging governmental immunity" (italics omitted)).

## III. Discussion

In a two-part issue, the Motorcyclists argue that NTTA did not carry its burden to conclusively establish that its employee had been responding to an emergency and that his actions had not been reckless. But the Motorcyclists bore the evidentiary burden. They did not meet that burden. And the trial court did not err by dismissing their claim.

### A.  The Motorcyclists bore the burden.

The Motorcyclists insist that "it was NTTA's burden to establish, as a matter of law, both [that] (1) [its employee] was responding to an emergency . . . and (2) [its employee] was not acting recklessly." This premise serves as the foundation for the Motorcyclists' two-part challenge to the judgment. But the premise is faulty.

"[T]he bedrock principle [is] that the plaintiff bears the burden to establish a waiver of immunity," including the burden to "negat[e] any provisions that create exceptions to, and thus withdraw, th[e relied-upon immunity] waiver." *City of Houston v. Gomez*, No. 23-0858, 2025 WL 1716878, at *2 (Tex. June 20, 2025); *Powell*, 704 S.W.3d at 447–48. So, when the emergency-response exception is in play, "[t]he plaintiff bears the burden of negating [the emergency-response exception's] applicability." *Maspero*, 640 S.W.3d at 529; *see City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006).

However, "[w]hether the plaintiff bears an *evidentiary* burden [at the plea to the jurisdiction stage] depends on how the government responds to the purported

6

waiver" in "pos[ing] its jurisdictional challenge." *Powell*, 704 S.W.3d at 447. A jurisdictional plea can take multiple approaches—it may "be like a no-evidence motion for summary judgment by asserting that the plaintiff has produced no evidence of an element required for the immunity waiver to apply," it "may mirror a traditional motion for summary judgment by attaching evidence in an effort to conclusively negate jurisdiction," or it "may be like a hybrid motion for summary judgment where both parties attach evidence." *Id.* at 447–48; *see Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 551–52 (Tex. 2019) (reasoning that, because "the burden to establish . . . waiver of a government defendant's immunity from suit[] is on the plaintiff, we see no reason to . . . foreclose [jurisdictional] challenges via no-evidence motions"). These differing approaches trigger differing allocations of the initial evidentiary burdens. *See Swanson*, 590 S.W.3d at 551–52 (noting as much).

Here, NTTA's plea was akin to a hybrid summary judgment motion. Although NTTA attached evidence to conclusively show that its employee had been responding to an emergency, it also noted that "[i]t [wa]s Plaintiffs' [i.e., the Motorcyclists'] burden to negate the applicability of the Emergency[-]Response Exception," and it asserted that the Motorcyclists "ha[d] yet to identify any evidence that dispute[d]" the emergency-response context and had "yet to identify any specific facts showing that [the employee's] actions . . . r[o]se to the level of conscious indifference or reckless

7

disregard for the safety of others."[3] *Cf. Powell*, 704 S.W.3d at 448 (concluding that plea "most closely mirror[ed] a no-evidence motion" when it asserted emergency-response exception and argued that plaintiff had failed to establish jurisdictional facts). The first assertion was comparable to a traditional motion for summary judgment— "attaching evidence in an effort to conclusively negate jurisdiction"—while the latter assertions amounted to no-evidence challenges "asserting that the plaintiff[s] ha[d] produced no evidence of [one or more] element[s] required for the immunity waiver," namely, the emergency-response context and the employee's recklessness. *Id.*

Generally, "[i]f a party moves for summary judgment on both traditional and no-evidence grounds, . . . we first consider the no-evidence motion." *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017); *see City of San Antonio v. Garcia*, No. 08-23-00329-CV, 2024 WL 3066051, at *3 (Tex. App.—El Paso June 20, 2024, no pet.) (mem. op.) (quoting and applying rule to hybrid summary judgment motion challenging emergency-response exception). To survive a no-evidence motion, the nonmovant is required "to produce enough evidence—that is, more than a scintilla—to create a genuine issue of material fact as to the challenged element." *Swanson*, 590 S.W.3d at 552. Consequently, when a governmental entity files a hybrid motion (or comparable plea) asserting immunity, as NTTA did here, the plaintiffs must affirmatively meet that challenge; they must respond and raise a fact issue on the

---

[3]NTTA's plea did not use the phrase "conclusively," nor did it use the phrase "no evidence."

challenged elements of their relied-upon immunity waiver. *See Powell*, 704 S.W.3d at 447–48; *Swanson*, 590 S.W.3d at 551–52; *Garcia*, 2024 WL 3066051, at *3; *cf. Marsillo v. Dunnick*, 683 S.W.3d 387, 393–94 (Tex. 2024) (reviewing hybrid summary judgment motion, starting with no-evidence grounds, and noting that nonmovant was required to respond with legally sufficient evidence of challenged elements). The "ultimate issue" is not whether the government conclusively negated jurisdiction but "whether the nonmovant raised a fact issue to preclude summary judgment." *Powell*, 704 S.W.3d at 448.

The Motorcyclists thus bore the evidentiary burden to negate the emergency-response exception's applicability by raising a fact issue on one or both of the elements challenged in NTTA's plea: (1) the emergency-response context and (2) the NTTA employee's recklessness. *See Garcia*, 2024 WL 3066051, at *3 (reviewing hybrid summary judgment motion and explaining that, "[t]o avoid a no-evidence summary judgment on the emergency[-response] exception, the [plaintiffs] had to show that a genuine issue of material fact existed by presenting evidence [that] . . . (1) [the officer] was not responding to an emergency call or reacting to an emergency situation, (2) [the officer]'s actions [qualified for another potential carveout] . . . , or (3) [the officer]'s actions show that he acted with conscious indifference or reckless disregard for the safety of others"). The Motorcyclists' insistence to the contrary renders their appellate challenges unavailing.

**B. The Motorcyclists did not dispute the emergency-response context.**

The Motorcyclists first assert that NTTA failed to conclusively establish that its employee had been responding to an emergency at the time of the collision. But NTTA bore no burden to do so. *See Powell*, 704 S.W.3d at 447–48; *Garcia*, 2024 WL 3066051, at *3. Indeed, in the trial court, the Motorcyclists did not dispute the emergency-response context but focused instead on the recklessness carveout.[4] *See Garcia*, 2024 WL 3066051, at *4 (reviewing hybrid motion challenging emergency-response exception and noting that plaintiffs' jurisdictional response focused on a different issue and "did not discuss the emergency[-response] . . . exception[], did not argue that [it] did not apply, . . . did not present evidence about the elements of th[e] exception[]," and did not direct the trial court to any jurisdictional evidence negating the exception).

Here, the Motorcyclists had the burden, and "[i]f [a] non[]movant fails to overcome its no-evidence burden on any claim, we need not address the traditional motion to the extent it addresses the same claim." *Lightning Oil*, 520 S.W.3d at 45; *see Garcia*, 2024 WL 3066051, at *4 (reviewing hybrid summary judgment motion asserting emergency-response exception and noting that, if the nonmovant does not carry its burden, the trial court "*must* grant the [no-evidence] motion" as to the

---

[4]NTTA pointed this out on appeal, but the Motorcyclists replied by doubling down on their contention that "it was <u>NTTA's burden</u> to establish that [the employee] was responding to an 'emergency,'" claiming that they were not obligated to respond to the plea.

challenged element). Because the Motorcyclists did not respond to or dispute NTTA's no-evidence challenge regarding the emergency-response context, they did not carry their burden on that challenged element.[5] *See Lightning Oil*, 520 S.W.3d at 45 (reiterating that, "[t]o defeat a no-evidence motion [or plea], the non[]movant must produce at least a scintilla of evidence raising a genuine issue of material fact as to the challenged elements"); *Hadlock v. Tex. Christian Univ.*, No. 2-07-290-CV, 2009 WL 485669, at *2–6 (Tex. App.—Fort Worth Feb. 26, 2009, pet. denied) (mem. op.)

---

[5]Moreover, even if we were to reach the merits of the Motorcyclists' challenge, the challenge would fail because they did not raise a fact issue regarding whether the employee was responding to an emergency. *Cf. Garcia*, 2024 WL 3066051, at *4–5 (addressing merits of emergency-response challenge despite plaintiffs' failure to address exception in response to hybrid summary judgment motion). The NTTA employee's uncontroverted averments reflected that he had been "dispatched to an ongoing emergency regarding a collision," instructed to block off the traffic lane due to related roadway debris, and "required . . . to respond quickly to prevent motorists from colliding with debris in the roadway or from causing other problems by swerving to avoid the debris." Although the Motorcyclists questioned these statements, they did not produce any contradicting evidence of the prior collision, roadway debris, or urgency of the situation. And while the Motorcyclists emphasize that the employee did not witness any drivers swerving to avoid the debris, a firsthand observation of swerving was not required for the debris to constitute "an unforeseen combination of circumstances or the resulting state that call[ed] for immediate action." *Emergency*, Merriam-Webster, https://www.merriam-webster.com/dictionary/emergency (last visited Aug. 4, 2025); *see City of San Antonio ex rel. City Pub. Serv. Bd. of San Antonio v. Smith*, 562 S.W.3d 75, 82–83 (Tex. App.—San Antonio 2018, pet. denied) (commenting that "Texas appellate courts have concluded that claims arising from objects blocking lanes on highways were emergency situations" and "fell within the scope of [the emergency-response exception]"); *cf. City of Coll. Station v. Kahlden*, No. 10-12-00262-CV, 2014 WL 1269026, at *3–5 (Tex. App.—Waco Mar. 27, 2014, pet. denied) (mem. op.) (holding officer was responding to emergency when he saw boots on an exit ramp, witnessed vehicles swerving to avoid them, and stopped to remove them).

(noting that, "[b]ecause [a]ppellees asserted a no-evidence motion, [appellant] had the burden to point out evidence in support of the challenged elements in order to prevent summary judgment," and because he did not do so, the trial court properly granted summary judgment on those claims). The first portion of the Motorcyclists' two-part issue is overruled.

## C. The Motorcyclists produced no evidence of recklessness.

This brings us to the second part of the Motorcyclists' challenge to the judgment—and the central point of dispute in the trial court. The Motorcyclists assert that NTTA failed to conclusively disprove—or, given the clarified burdens, that they raised a fact issue regarding—the employee's recklessness.

For the Motorcyclists to carry their burden of showing that NTTA's employee acted with "conscious indifference or reckless disregard" under the recklessness carveout, Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2), they were required to produce evidence of "more than a momentary judgment lapse" by showing that the NTTA employee "committed an act he knew or should have known posed a high degree of risk of serious injury," *Powell*, 704 S.W.3d at 457 (internal quotation marks omitted). Put differently, the Motorcyclists needed to demonstrate that the employee's actions "involve[d] a willful or wanton disregard for the safety of others." *Gomez*, 2025 WL 1716878, at *3 (internal quotation marks omitted) (referencing statutory definition of reckless driving offense); *City of Arlington v. Taylor*, No. 02-22-00325-CV, 2023 WL 6631533, at *5 (Tex. App.—Fort Worth Oct. 12, 2023, pet.

12

denied) (mem. op. on reh'g); *see City of Houston v. Green*, 672 S.W.3d 27, 30 (Tex. 2023) (rephrasing standard as employee having "commit[ted] 'an act he knew or should have known posed a high degree of risk of serious injury' to others").

Willful or wanton disregard can be established with evidence that an employee's actions "generated [an] 'extreme risk' beyond that which is inherent in [his emergency response]." *Powell*, 704 S.W.3d at 456–57; *Maspero*, 640 S.W.3d at 532. Conversely, evidence that an employee "engaged in some degree of risk assessment" indicates a lack of recklessness. *Powell*, 704 S.W.3d at 456–57; *Maspero*, 640 S.W.3d at 532. In determining whether the Motorcyclists made the requisite showing, we review the evidence in the light most favorable to them, drawing all reasonable inferences in their favor. *See Gomez*, 2025 WL 1716878, at *2; *Powell*, 704 S.W.3d at 448.

The Motorcyclists point to four aspects of the jurisdictional evidence that they claim show recklessness: the employee's statements that he changed lanes without a blinker, that he knew that drivers routinely ignored his truck's emergency lights, that he moved "slowly" from a dead stop into a high-speed lane, and that he did so despite seeing approaching headlights.

The first two aspects of the employee's actions are of no moment; they reflect risks inherent in the emergency response. The uncontroverted evidence showed that, when the NTTA truck's emergency lights were activated, the truck's turn signals were inoperable. And the uncontroverted evidence also showed that some motorists disregarded the truck's emergency lights. There was neither indication nor allegation

13

that these consequences were within the employee's power to change. And the Motorcyclists do not contend that the employee's activation of his emergency lights demonstrated a willful disregard of others' safety—nor could they plausibly do so. To the contrary, the flashing emergency lights were an overt safety warning by their very nature, and they were part and parcel of the employee's emergency response. The unavoidable consequences of this emergency response are no evidence that the employee unnecessarily increased its inherent risks or disregarded others' safety. *Cf. Maspero*, 640 S.W.3d at 532 (holding no evidence of recklessness in case involving high-speed chase and explaining that "[e]xceeding the speed limit is part and parcel of a police chase" and was no evidence of recklessness).

As for the other two aspects of the employee's actions that the Motorcyclists highlight—his moving "slowly" into a high-speed lane and his doing so despite seeing headlights—such evidence is too vague to raise a fact issue on recklessness. *See Powell*, 704 S.W.3d at 458. Doubtless, a slow speed and approaching headlights could conceivably raise a fact issue on recklessness in certain circumstances. If, for example, the evidence had shown that the employee had shifted into the Motorcyclists' lane while traveling at less than 5 mph and despite seeing the Motorcyclists just 10 feet away and approaching at 80 mph, such evidence would be cause for alarm. But "vague descriptions" of the employee's speed and of headlights at an unknown distance are insufficiently specific to support a finding of recklessness. *Id.*

14

The Texas Supreme Court recognized the need for specificity in *Powell*. *See id.* at 456–62. There, two police cars were pursuing a fugitive in a high-speed chase, and when one of the cars slowed to turn right, the other collided with it, lost control, and hit the plaintiff's minivan. *Id.* at 446. The plaintiff sued, asserting that the recklessness carveout applied and pointing to evidence that, among other things, the officer had been traveling at a high rate of speed. *Id.* at 446, 457–58. The Texas Supreme Court rejected such evidence as "vague" and "lack[ing] specificity." *Id.* at 458. It noted that "even if *some* exceedingly high rate of speed could amount to recklessness, evidence of the actual speeds involved would be necessary to make such a showing," and no such evidence had been offered. *Id.* And it applied the same logic to the plaintiff's contention that the officer had failed to maintain a safe following distance—absent a "prerequisite showing of what the following distance was," the plaintiff's vague description could not raise a fact issue on recklessness. *Id.* at 459–60; *see Green*, 672 S.W.3d at 29–31 (concluding that plaintiff's testimony that officer had been "'traveling at a high rate of speed' and 'very fast'" was no evidence of recklessness because such "descriptions lack[ed] specificity and [were] no evidence [to] establish[] the type of high-speed travel that, by itself, could support a finding of reckless disregard").

The Motorcyclists' evidence suffers from the same vagueness problem. While the NTTA employee averred that he had "slowly" moved into the Motorcyclists' traffic lane, there was no evidence regarding what the employee considered "slow[]"

15

or what his "slow[]" speed actually was. Similarly, although the employee acknowledged that, in general, traffic on the toll road could be traveling at up to 80 mph, there was no evidence of the actual speeds the Motorcyclists were traveling just before the collision. And while the employee described seeing headlights approaching from a "considerable distance" away, there was no evidence of the Motorcyclists' distance when the employee began to move into their lane.[6]

Furthermore, much of the Motorcyclists' own jurisdictional evidence cuts against their recklessness argument. *See Powell*, 704 S.W.3d at 461–62 (noting that the appellate court must consider "evidence that contextualizes the circumstances and suggests that [the officer] was *not* reckless" though emphasizing that the government "was under no burden to provide evidence, including evidence of [the allegedly reckless officer's] good behavior"). The affidavits accompanying the Motorcyclists' response contained the NTTA employee's averments that

- he was in contact with dispatch throughout the relevant time period;

- his vehicle's flashing yellow and blue emergency lights were activated;

- his truck's "large, rectangular illuminated message board . . . above the cab" was "deployed and in the upright position," alternating between a message warning motorists and an arrow pointing to the right;

- he was instructed by dispatch to move his vehicle one lane over; and

---

[6]The Motorcyclists' response to NTTA's plea was accompanied by what they described as two "still shots from the [area traffic-camera] video," but the relevant vehicles, distances, and events were not identified in the still shots.

16

- he twice "looked in front of, to each side of, and behind [his] NTTA [truck], checking for traffic" and "allowed the close vehicles coming from behind to pass" before he moved his truck into the next lane.

These statements were uncontroverted,[7] and they reflect affirmative actions that the employee took to minimize the safety risk to others—"[e]vidence of risk assessment . . . [that] undermines [the Motorcyclists'] contention that [the employee] 'did not care about the result' of his action[s]." *Id.* Such risk-assessment evidence is discussed in *Powell.*

There, the court noted that the officer's having "stayed in contact with his supervisors," having been authorized to pursue the chase, and having driven "with his lights and siren activated" were all "affirmative[] demonstrat[ions of his] intent to minimize potential harm, not his intent to ignore or exacerbate the possible risks posed by a car chase." *Id.* (internal quotation marks omitted). The NTTA employee's

---

[7]The Motorcyclists supported their response to NTTA's plea by offering the employee's two affidavits and excerpts from his deposition, much of which they criticize, claiming that the employee's affidavits and testimony conflict with one another and are inconsistent "with the reality of the collision."

But the statements that the Motorcyclists point to as inconsistent with one another—the employee's averment that the "long and straight" road gave him an unobstructed view of approaching headlights and his testimony that, because it was dark and the headlights were far away, he did not know if the headlights he saw belonged to the Motorcyclists—do not conflict.

And "the reality of the accident" itself is no evidence of recklessness. *See Powell*, 704 S.W.3d at 459 (noting that "the mere happening of an accident is no evidence at all of negligence" and "[f]ar less . . . can the 'happening of an accident' supply any evidence of *recklessness*").

17

parallel actions here—his communications with dispatch, compliance with dispatch's directives, use of emergency lights, and canvassing for approaching traffic—similarly reflect that he did not disregard the safety of others. *See id.*; *Green*, 672 S.W.3d at 31 (holding no evidence of recklessness and noting officer's uncontroverted testimony that he had activated his emergency lights and that he had slowed before proceeding through intersections); *Maspero*, 640 S.W.3d at 532 (noting that officer's actions demonstrated intent to minimize harm when she communicated with her supervisor throughout the chase, followed instructions to modify or terminate the pursuit, and slowed down at intersections); *Taylor*, 2023 WL 6631533, at *5 (holding no evidence of recklessness and noting that officer's lights and sirens were activated and that he slowed and scanned intersections before proceeding).

Thus, the Motorcyclists failed to carry their burden to raise a fact issue regarding the NTTA employee's recklessness. We overrule this second portion of their two-part issue.

## IV. Conclusion

Because the Motorcyclists failed to respond to NTTA's no-evidence challenge to the emergency-response context and failed to present any evidence of the allegedly reckless nature of the NTTA employee's actions, the trial court did not err by granting the plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). We affirm. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered:  August 14, 2025